```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    ------------------------------------x
 3  UNITED STATES OF AMERICA,

 4
                                    25 MG 2616 (AEK)
 5       -vs-
                                    INITIAL APPEARANCE &
 6                                        BAIL HEARING
    DANIEL ALAN MONARCHI,
 7
                         Defendant(s).
 8  ------------------------------------x

 9       *Proceedings recorded via digital recording device*

10                            United States Courthouse
                              White Plains, New York
11
                              August 22, 2025
12

13  B e f o r e:  THE HONORABLE ANDREW E. KRAUSE,
                            United States Magistrate Judge
14

15
    A P P E A R A N C E S:
16

17  JAY CLAYTON
         United States Attorney for the
18       Southern District of New York
    PATRICIA REVILLE
19  JORJA KNAUER
         Assistant United States Attorneys
20

21  FEDERAL DEFENDERS OF NY, INC.
    ELIZABETH K. QUINN
22       Attorneys for Defendant

23

24

25
```

Case 7:25-mj-02616-UA    Document 12    Filed 10/03/25    Page 2 of 42

Init. App./Bail Hrg.         USA v. Monarchi                         2

 1          THE DEPUTY CLERK:  Good afternoon, all.  This is the

 2  matter of USA v. Daniel Monarchi, Docket No. 25 mj 2616, the

 3  Honorable Andrew Krause presiding.

 4          Counsel, note your appearance for the record, starting

 5  with the Government.

 6          MS. REVILLE:  Good afternoon, your Honor.  Tricia

 7  Reville for the Government, and I'm joined by my colleague,

 8  Jorja Knauer.

 9          THE COURT:  Good afternoon, Ms. Reville.

10          Good afternoon, Ms. Knauer.

11          MR. QUINN:  Good afternoon, your Honor.  Elizabeth

12  Quinn with the Federal Defenders for Mr. Monarchi.

13          THE COURT:  Good afternoon, Ms. Quinn.

14          Good afternoon, Mr. Monarchi.

15          THE DEFENDANT:  Good afternoon.

16          THE COURT:  Good afternoon, Ms. Harrison.

17          MS. HARRISON:  Good afternoon, your Honor.

18          THE COURT:  All right, Mr. Monarchi, my name is Judge

19  Krause.  I want to advise you that today's proceeding is not a

20  trial and you'll not be called upon to answer or plead to any

21  charges at this time.  This proceeding is called an initial

22  appearance, and the purpose of the proceeding is to advise you

23  of your rights, advise you of the charges against you, and to

24  determine whether bail should be set that may allow you to be

25  released and if so, what that bail should be.

1          You have the right to remain silent at this and every

2    stage of the proceedings.  Any statement that you do make may be

3    used against you.  You have this right to remain silent even if

4    you have already made statements to law enforcement officers,

5    and you're not required to answer any questions that law

6    enforcement officers may ask you from this point forward.

7          THE DEFENDANT:  Understood.

8          THE COURT:  For that reason, I suggest that you

9    consult with your attorney before you answer any questions that

10   you may be asked.  Do you understand that?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  All right, Ms. Brown, would you please

13   place Mr. Mon -- is it Monar-KEE (ph) or Monar-CHEE (ph)?

14         THE DEFENDANT:  Monar-KEE (ph).

15         THE COURT:  Ms. Brown, would you please place Mr.

16   Monarchi under oath or affirmation.

17         THE DEPUTY CLERK:  Yes.

18         Please raise your right hand.

19              DANIEL ALAN MONARCHI,

20                  Sworn.

21         THE COURT:  All right, Mr. Monarchi, you are under

22   oath now.  It is important for you to understand that if you

23   knowingly make a false statement during this proceeding, you

24   could be subject to prosecution for perjury or for making a

25   false statement to the Court and you could face a punishment of

1    up to five years in prison and a $250,000 fine if you were to be

2    convicted of those offenses.  That punishment would be separate

3    and apart from any sentence you may be facing on the crimes

4    charged in the Complaint that has brought us here today.

5              Do you understand that?

6              THE DEFENDANT:  I understand that.

7              THE COURT:  It is also important for you to understand

8    that any false statement that you make during this proceeding,

9    as well as any false statement you may have made already to

10   Pre-Trial Services, may be used against you at trial in this

11   case if there is a trial and if you decide to testify at that

12   trial.

13             Do you understand that?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Mr. Monarchi, will you please state your

16   full name for the record.

17             THE DEFENDANT:  Daniel Alan Monarchi.

18             THE COURT:  How old are you?

19             THE DEFENDANT:  I'm 26.

20             THE COURT:  Do you have any difficulty reading,

21   writing, speaking, or understanding English?

22             THE DEFENDANT:  I do not.

23             THE COURT:  How far did you go in formal school?

24             THE DEFENDANT:  I received a graduate degree.

25             THE COURT:  Have you taken or used any mind-altering

Init. App./Bail Hrg.          USA v. Monarchi                          5

1  drugs, alcohol, or medication within the last 24 hours?

2          THE DEFENDANT:  No, sir.

3          THE COURT:  Do you understand what's happening at this

4  proceeding?

5          THE DEFENDANT:  I do.

6          THE COURT:  If you have made any statements to

7  Pre-Trial Services that you would like to correct or add to in

8  any way, you should discuss that with Ms. Quinn so that the

9  record can be corrected.

10          Do you understand that?

11          THE DEFENDANT:  I understand.

12          THE COURT:  Okay.

13          Ms. Quinn, any additions or corrections to the

14  Pre-Trial Services report at this time?

15          MR. QUINN:  No, your Honor.

16          THE COURT:  All right, Ms. Reville, may I have the

17  time and date of the arrest, please.

18          MS. REVILLE:  Yes, your Honor.  The defendant was

19  arrested earlier today, August 22nd, 2025, by the FBI in Red

20  Hook, New York.  The arrest took place at approximately 8:45

21  a.m.

22          THE COURT:  Okay, thank you.

23          Mr. Monarchi, you have the right to be represented by

24  an attorney for all court proceedings, including this one, and

25  during all questioning by the authorities.  You have a right to

Case 7:25-mj-02616-UA   Document 12   Filed 10/03/25   Page 6 of 42

Init. App./Bail Hrg.        USA v. Monarchi                          6

1   hire your own attorney, but if you cannot afford one, I will

2   appoint one to represent you at the Government's expense.

3              Do you understand that?

4              THE DEFENDANT:  I do.

5              THE COURT:  All right, Mr. Monarchi, the -- Ms. Quinn

6   has provided the Court with this financial affidavit form for

7   purposes of my appointing her to serve as your attorney in this

8   matter.

9              Is this your signature on the financial affidavit?

10             THE DEFENDANT:  Correct.

11             THE COURT:  Ms. Quinn, did you prepare this financial

12  affidavit form with Mr. Monarchi in advance of today's

13  proceeding?

14             MR. QUINN:  I did, your Honor.

15             THE COURT:  I -- we'll go through the questioning in a

16  second.

17             Look, I always see financial affidavits of all sorts,

18  but there's more money here than in the vast majority of

19  financial affidavits that I see.

20             THE DEFENDANT:  This, this was just a -- sorry.

21             MR. QUINN:  Yes, your Honor.  I made Mr. Monarchi

22  aware that he may not qualify for our legal services, but we

23  figured in an abundance of caution he would fill one out.

24             He is -- he as of right this second has a job, but

25  it's very likely he will not have a job in the near future, so I

1  --

2         THE COURT:  Correct.

3         MR. QUINN:  -- that's also part of the equation.

4         THE COURT:  Right.  So are you seeking to be appointed

5  going forward in this matter, Ms. Quinn, or are you seeking to

6  be appointed for purposes of presentment only or what did --

7  what is it that you think?

8         MR. QUINN:  I was going to ask for the -- for the near

9  future.  Obviously, if you don't feel that he qualifies at this

10 moment, we could always reapply if we think that he does qualify

11 in the future.  Since we typically do them for initial

12 appearances, I thought in an abundance of caution I would submit

13 it.

14         THE COURT:  Yeah.  I mean, it's -- I, I...usually it's

15 not a close call.  Frankly.  Right?  I mean, usually somebody

16 has de minimus assets, or if they have even this level of

17 assets, they have dependents, in which case there are different

18 dynamics at play.

19         MR. QUINN:  What I could suggest, too, is that I could

20 be appointed for this appearance only; he could attempt to find

21 a lawyer.  I think we would then have additional information

22 about where his financial situation may land.

23         THE COURT:  Right.

24         MR. QUINN:  And then if he thinks he qualifies at that

25 point, I could reapply.

1            THE COURT:  Okay, I think that's probably a good

2    suggestion.

3            And, look, I do understand that retaining counsel in a

4    federal criminal matter is an expensive proposition, especially

5    for somebody who is facing the prospect of unemployment.  I

6    mean, I don't know exactly how that's going to play out, but

7    that certainly seems like a realistic possibility, and that,

8    that changes the dynamics to a significant degree as well.

9    What's noteworthy here, though, is that Mr. Monarchi has a

10   substantial amount of assets in, in savings and has virtually no

11   expenses, so that's where we get to a question of whether

12   appointment of counsel's appropriate.

13           But certainly for today's purposes, it makes sense to

14   appoint Ms. Quinn for purposes of this proceeding so that you

15   can be represented during this proceeding, Mr. Monarchi, and

16   then perhaps we'll have a further report back on your efforts to

17   obtain counsel, maybe a week or two weeks from today, and we can

18   take stock of where things are at that point.

19           Does that make sense, Mr. Monarchi?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  Okay.

22           Okay, so, Ms. Quinn, this financial affidavit, I think

23   I asked you this already, but let me just ask again, was

24   prepared in consultation with Mr. Monarchi in advance of today's

25   proceeding?

1              MR. QUINN:  Yes.

2              THE COURT:  All right.

3              Mr. Monarchi, you have signed this financial affidavit

4   form under the penalty of perjury.  This means that you can be

5   charged with perjury for any false statements in the financial

6   affidavit, and you could face a punishment of up to five years

7   in prison and a $250,000 fine for that crime, perjury.  That

8   punishment would be separate and apart from any sentence you may

9   already be facing on the crimes charged in the Complaint.

10             Do you understand that?

11             THE DEFENDANT:  I understand that.

12             THE COURT:  Did you review this form with Ms. Quinn

13  before you signed it, Mr. Monarchi?

14             THE DEFENDANT:  I did.

15             THE COURT:  Do you swear that the information

16  contained in the financial affidavit is true?

17             THE DEFENDANT:  To the best of my knowledge right now,

18  yes, I do.  Yes, I swear it.

19             THE COURT:  Okay.  Is there something --

20             THE DEFENDANT:  I can, I can elaborate on that.

21             THE COURT:  Okay, briefly.  I mean, let's -- why don't

22  you talk to Ms. Quinn about that before you elaborate on it.  I

23  don't -- just to be clear, I don't...I don't need, like, a

24  dollars-and-cents, you know, down-to-the-penny accounting of the

25  amount in your bank account --

1              THE DEFENDANT:  Okay.

2              THE COURT:  -- or in your IRA, so if that's the

3    concern, that's fine.

4              THE DEFENDANT:  Yes.

5              THE COURT:  It does say that -- the total approximate

6    amount that you have and so if it's off by a hundred dollars

7    here or $200 there, that doesn't matter.  If it's off by

8    $50,000, that would matter.  So if we're just talking about a

9    little bit on the margins, that's okay.

10             THE DEFENDANT:  Yeah, it would be off within one or

11   two, maybe three, thousand dollars.

12             THE COURT:  Okay, that's fine, I appreciate the

13   precision, and that's, that's entirely appropriate, but that

14   doesn't have any impact on the analysis, so thank you for that.

15             THE DEFENDANT:  Thank you.

16             THE COURT:  Does the form, the financial affidavit

17   form, completely and accurately state your financial condition?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Do you have any other money or property

20   other than what you've listed on this form?

21             THE DEFENDANT:  No.

22             THE COURT:  Okay.  Mr. Monarchi, if you do have any

23   significant changes to your financial circumstances while this

24   case is ongoing, you must notify the Court.

25             Do you understand that?

1              THE DEFENDANT:  Absolutely.

2              THE COURT:  Now, as we've talked about here, yours is

3    a borderline case for appointment of counsel.

4              THE DEFENDANT:  Um-hum.

5              THE COURT:  Again, I do fully recognize and appreciate

6    that retaining counsel for a federal criminal prosecution is an

7    expensive proposition.  That said, your assets are substantially

8    higher than those for most defendants who come before the Court

9    seeking appointment of counsel, so I'm going to provisionally

10   appoint Ms. Quinn to serve as your attorney in this matter for

11   purposes of today and for the next two weeks, with the

12   understanding that you will spend that time, with the assistance

13   of your family if necessary, Mr. Monarchi, trying to locate

14   retained counsel.

15             If it comes back that you are not able to retain

16   counsel for an amount of money that you can afford, and, again,

17   that means different things to different people, so it's

18   perfectly valid to come back and say "these are the efforts that

19   have been made and because of the prices that we've been quoted

20   and the resources that we have, we can't afford counsel."

21             And, frankly, you know, appointed counsel through the

22   Federal Defenders of New York, you have outstanding appointed

23   counsel, so, again, I'm not suggesting you should go out and

24   find counsel just because you, you wouldn't be very, very

25   capably represented by Ms. Quinn; it's just that, again, the

1  financial threshold here is, is borderline, especially because

2  you don't report any monthly expenses, which makes sense in

3  light of my understanding from the Pre-Trial Services report

4  that you reside with one or both of your parents at different

5  times and that you don't have any dependents.

6          So, again, I will appoint Ms. Quinn provisionally for

7  two weeks, so that covers today's proceeding and, and gives you

8  the coverage of representation during this period of time while

9  you are seeking outside counsel, and, again, it is perfectly

10 appropriate to come back and say "we've made efforts and based

11 on what we've been quoted and what we understand the expense of

12 that to be, we are providing this additional information to

13 demonstrate why we think appointment of counsel permanently is

14 appropriate," and I'll consider the application at that time.

15          Does that all make sense?

16          THE DEFENDANT:  It does.  I appreciate that.

17          THE COURT:  Okay.

18          Does the Government have any objection or concern with

19 that approach?

20          MS. REVILLE:  No objections, your Honor.

21          THE COURT:  Okay, so, Ms. Quinn, I'll appoint you to

22 serve as Mr. Monarchi's counsel for the next two weeks and we'll

23 reevaluate the circumstances at that time.

24          Ms. Brown, what is the -- that -- two weeks from today

25 is September...5th?  Okay.  And we are on duty September 8th is

Case 7:25-mj-02616-UA    Document 12    Filed 10/03/25    Page 13 of 42

Init. App./Bail Hrg.        USA v. Monarchi                    13

1    that right?  Probably?

2              THE DEPUTY CLERK:  Yes, we are.

3              THE COURT:  Okay.

4              So, Ms. Quinn, if you can just provide an update to

5    the Court by September 5th...

6              MR. QUINN:  Um-hum.

7              THE COURT:  And if necessary, we could schedule a

8    proceeding for September 8, although if the request -- frankly,

9    I mean, if the request is to be relieved as counsel because Mr.

10   Monarchi has hired counsel, that doesn't require a proceeding,

11   and if you can -- if you do request to be appointed on a

12   permanent basis, you could probably provide enough information

13   in the letter to allow for that to be so ordered without the

14   need for an appearance, but if you, for whatever reason, would

15   rather not put that in a letter because it would have to be

16   filed on the docket, we could always approach it by having a

17   proceeding during the week of the 8th.

18             MR. QUINN:  Okay.

19             THE COURT:  Okay, very good.

20             So for all the reasons that we've discussed here, Mr.

21   Monarchi, I find that there is a question about whether you are

22   financially able to obtain counsel, which will be subject to

23   investigation over the next two weeks, and I appoint Ms. Quinn

24   to represent you for that two-week period.

25             And I thank you, Ms. Quinn, for taking the

Init. App./Bail Hrg.        USA v. Monarchi

1    appointment.

2        MR. QUINN:  Um-hum.

3        THE COURT:  All right, Mr. Monarchi, if you are not a

4    citizen of the United States, you would have the right to

5    request that a government attorney or a law enforcement official

6    notify a consular officer from your country of nationality that

7    you have been arrested.  Even without your request, a treaty or

8    other international agreement may require consular notification.

9        Do you understand that?

10        THE DEFENDANT:  I do, your Honor.

11        THE COURT:  All right.

12        Mr. Monarchi, I have before me a Complaint that

13    contains charges against you.  Specifically, Count One of the

14    Complaint charges you with sexual exploitation of a child, in

15    violation of Title 18 US Code § 2251A and 2251(e).

16        Mr. Monarchi, have you and Ms. Quinn received the

17    Complaint and reviewed the charges in the Complaint together?

18        THE DEFENDANT:  Yes, your Honor.

19        THE COURT:  Ms. Quinn, have you reviewed the Complaint

20    with Mr. Monarchi?

21        MR. QUINN:  I have, your Honor.  I do believe he

22    understands it, and I waive any public reading.

23        THE COURT:  Okay, thank you, Ms. Quinn.

24        Mr. Monarchi, you are entitled to what is called a

25    preliminary hearing at which the Government would have the

1  burden of establishing that there is probable cause to believe

2  that the crime for which you are being charged has been

3  committed and that you are the person who committed that crime.

4  If you were in custody, you have the right to have the

5  preliminary hearing within 14 days.  If you are not in custody,

6  you'd have the right to have the preliminary hearing within 21

7  days.  A preliminary hearing will not take place, however, if

8  the Government presents your case to a grand jury and obtains an

9  indictment on or before the date that is scheduled for the

10 preliminary hearing.

11         You also have the right to waive the preliminary

12 hearing entirely or to consent to an extension of time for the

13 hearing to take place, and if you chose to do either of those

14 things, you would not give up any defenses or any other rights

15 that you might have.  You should not waive or consent to an

16 extension of time for the hearing, however, until you've had an

17 opportunity to discuss that matter with your attorney.

18         Do you understand that?

19         THE DEFENDANT:  I do, your Honor.

20         THE COURT:  Ms. Quinn, has there been any discussion

21 about a date for the preliminary hearing?

22         MR. QUINN:  There hasn't, but we're going to waive to

23 the thirtieth day.

24         THE COURT:  Okay.

25         Ms. Brown?  24th?  That's all right.

1              (Brief pause)

2              THE COURT:  No, it's going to be the 17th, right?

3              THE DEPUTY CLERK:  Yes, August 17th.

4              THE COURT:  September 17th.

5              THE DEPUTY CLERK:  Right, September.

6              THE COURT:  September 17th for the preliminary

7    hearing.

8              Ms. Reville, no objection from the Government, right?

9              MS. REVILLE:  No objections, your Honor.

10             THE COURT:  Okay.  So we'll set the preliminary

11   hearing date as September 17th.  Just to be clear, though, in

12   all likelihood there will not be an actual hearing on that date,

13   and that's for a couple of reasons.

14             First, that we set the date as we are required to do,

15   at the initial conference in the case, but I would say in 99

16   percent, if not more, of the cases that come before judges in

17   this courthouse, one of two things typically happens before the

18   date for the preliminary hearing.

19             One, your attorney, the defense lawyer, and the lawyer

20   for the Government will talk about the status of the case, talk

21   about different paths forward, and agree to adjourn the

22   preliminary hearing by another month.  Sometimes that happens

23   many times over the course of a case.  I would say that that

24   happens in a very, very high percentage of cases here.

25             In the remaining cases, if you choose not to do

1    that -- of course, you're not required to do that.  If you

2    choose not to do that, the Government typically would take your

3    case to the grand jury and seek to obtain indictment before

4    September 17th, and if they do that, you no longer have the

5    right to the hearing anyway.  In other words, if they get an

6    indictment, you don't have the right to the hearing anyway.

7              So, again, I'd say in 99 percent of the cases, if not

8    more, one of those two things would happen, either an

9    adjournment or an indictment, in which case there wouldn't be a

10   hearing on the 17th, so that's a control date, we have it on the

11   calendar, but in all likelihood, you will not be back in court

12   on that day.

13             Does that make sense, Mr. Monarchi?

14             THE DEFENDANT:  Yes, sir -- your Honor.

15             THE COURT:  Okay.

16             THE DEFENDANT:  That makes sense.

17             THE COURT:  Okay, let's turn to the question of bail,

18   detention, or release.

19             What is the Government's position?

20             MS. REVILLE:  The Government is seeking detention,

21   your Honor.

22             THE COURT:  Okay.

23             And, Ms. Quinn, are you going to make a bail

24   application today?

25             MR. QUINN:  Yes, I am.

Init. App./Bail Hrg.        USA v. Monarchi

1          THE COURT:  Okay.  Well, I'll hear from the Government

2    first and then I'll hear arguments from the defense and then

3    we'll proceed from there.

4          MS. REVILLE:  Your Honor, the Government seeks

5    detention on grounds of danger to the community and risk of

6    flight.

7          As an initial matter, this is a presumption case to

8    Title 18 United States Code § 3142(e)(3)(E).  That means that

9    there is a presumption here that no condition or combination of

10   conditions will reasonably assure the appearance of the

11   defendant and the safety of the community.

12         The presumption here applies because the defendant is

13   charged with an offense listed in 3142(e)(3)(E).  Specifically,

14   he is charged with an offense listed in that section.  One count

15   of sexual exploitation of a child, in violation of Title 18

16   United States Code 2251A and (e).

17         First, I'd like to speak about the issue with respect

18   to danger.

19         The offense conduct here makes it plain that the

20   defendant presents a danger to the community.  The Complaint

21   charges the defendant with one count of sexual exploitation of a

22   minor.  This count carries a 15-year mandatory minimum sentence.

23   Currently, the defendant is charged with exploitation of one

24   victim, referred to as victim 1 in the Complaint, but, your

25   Honor, the Government has evidence that the defendant has also

1    engaged in similar conduct with multiple other victims, which

2    the Government continues to investigate.  This is an extremely

3    serious offense and the nature and circumstances alone justify

4    detention of the defendant.

5            Now, I know the Court is familiar with the Complaint,

6    but I'd like to summarize the main points of the defendant's

7    criminal conduct here.

8            THE COURT:  Okay, you don't --

9            MS. REVILLE:  Yeah.

10           THE COURT:  -- I mean, you do not need to go into

11   chapter and verse.  It's fine if you'd like to, to point out a

12   few of the salient points, but I have read the Complaint, I've

13   read the Pre-Trial Services report, so...

14           MS. REVILLE:  Yes, your Honor.

15           THE COURT:  Choose your highlights.

16           MS. REVILLE:  Okay.  Thank you, your Honor.

17           I'll start with in February 2024 --

18           THE COURT:  Let me just pause --

19           MS. REVILLE:  Yeah.

20           THE COURT:  -- ask you to pause there for one second.

21           You mentioned that the Government has evidence

22   regarding multiple other victims.  There are two victims who are

23   referenced in the Complaint, victim 2 and victim 3, and those --

24           MS. REVILLE:  Yes, your Honor.

25           THE COURT:  -- specific charges are brought with

1   respect to those victims.  When you say "multiple other

2   victims," maybe you just mean the ones that are referenced in

3   the Complaint.  Do you mean there are other victims beyond those

4   that are referenced in the Complaint?

5               MS. REVILLE:  Yes --

6               THE COURT:  That you're aware of as we sit here today?

7               MS. REVILLE:  Yes, your Honor, so I'd like to make two

8   points on that.

9               The first is that the Government has evidence related

10  to two additional victims outside of the three in the Complaint.

11  We're still working on getting interviews with those victims and

12  tracking down evidence there.

13              The second point that I would like to make, your

14  Honor, is that actually, as of this afternoon, the Government

15  received more information of another victim communicating with

16  the school where the defendant recently worked, and that conduct

17  was taking place as recently as July about a month ago.  And

18  this is very concerning conduct to us, your Honor.

19              THE COURT:  And these other victims that you have

20  information about, all approximately the same age as the victims

21  referenced in the Complaint?

22              MS. REVILLE:  Yes, your Honor, minor victims.

23              THE COURT:  Okay.  Okay, you can continue.

24              MS. REVILLE:  Thank you, your Honor.

25              So the highlights that I'd like to make, your Honor,

1  are that the defendant, as far as we know, is a middle school

2  special education teacher at Haviland Middle School, which is a

3  public middle school in Hyde Park, New York, in Dutchess County.

4  We know from his communications with victim 1 that he teaches

5  seventh grade, seventh graders who are 12 to 13 years old, and

6  that he is a social studies special education teacher.

7          And just to remind your Honor of the time frame we're

8  talking about here, in February 2024, the defendant created a

9  Discord account in which he styled himself as "Mr. Teacherman."

10 The defendant then engaged, through at least February 2024 and

11 through March of this year, in numerous sexually explicit

12 conversations as Mr. Teacherman.  These communications were with

13 victim 1 and at least two other minor victims, as outlined in

14 the Complaint.  He told the victims that he was a middle school

15 teacher and he learned, at least as to victim 1, who is the

16 victim primarily focused on in the Complaint, and victim 2, that

17 they were under 18 and, in fact, he learned that they were 14

18 and 13 respectively.

19         Your Honor, the communications that the Government has

20 are extremely disturbing and extremely serious.  The defendant,

21 a middle school teacher, knew that victim 1 was 14.  He

22 repeatedly engaged in sexually explicit communications in which

23 he sent the victim pictures of himself, including his erect

24 penis.  He described how he wanted to have sex with victim 1,

25 having described her as an after-school snack and his teacher's

Init. App./Bail Hrg.        USA v. Monarchi

1   pet.  He demanded that victim 1 send him multiple sexually

2   explicit photos and videos, which she did.  The Government is

3   also investigating his communications with additional victims

4   who I just walked your Honor through.

5           So the weight of the evidence here is extremely

6   strong.  We have these communications, we have the videos;

7   they've been traced back to the defendant.  The information from

8   Discord on the IP addresses show that IP sessions at both the

9   Red Hook premises and the Staatsburg premises, where we

10  understand the defendant resided with his mother and father

11  respectively.  These IP sessions show that Mr. Teacherman was on

12  Discord in these locations around the times of these chats.

13          For example, when the defendant sent victim 1 four

14  photos which are outlined in the Complaint, including the photo

15  of his erect penis, the records show that there was an active IP

16  session from the Staatsburg residence, which is his father's

17  house.  Law enforcement also executed search warrants this

18  morning on the two premises and they located multiple other

19  electronic devices and electronic media.  We're obviously only

20  beginning to process those, but there are multiple phones,

21  laptops, tablets, drives, et cetera.

22          I'll also add, your Honor, that law enforcement also

23  found sheets in what was -- is the defendant's bedroom in both

24  of these premises.  Those sheets match selfie pictures that the

25  defendant sent to the victims.  All of this weighs very strongly

1  in favor of detention.

2          I'd like to turn now to the history and

3  characteristics of the defendant.

4          The defendant is 26 years old, he is a middle school

5  teacher, so in his workplace, he is literally surrounded by, and

6  charged with caring for and teaching, students of the same age

7  that these victims are, and far from perpetrating these crimes,

8  he has a legal obligation to report this sort of conduct himself

9  in his position as a teacher.  But I also want to add that the

10  defendant is college-educated, as we just learned he also

11  attended graduate school, he's a teacher, he's clearly

12  sophisticated, yet he has engaged in these hideous

13  communications with victims of the same age as his students.

14  This is extremely concerning to the Government.

15          With his education and sophistication, which is even

16  referenced in these chats where he references burner accounts,

17  not just burner phones, your Honor, but actual burner accounts

18  on Discord, he refers to deleting photos with his face in them,

19  he's sophisticated, he's aware of mechanisms to avoid detection

20  by law enforcement.  These characteristics strongly undermine

21  potential conditions and -- potential conditions of detention

22  that might otherwise be thought to mitigate the danger that he

23  poses to society.

24          Now, I'd like to turn to the nature and seriousness of

25  the danger that he poses to the community if released.

Case 7:25-mj-02616-UA    Document 12    Filed 10/03/25    Page 24 of 42

Init. App./Bail Hrg.        USA v. Monarchi                    24

1            All of what I just discussed, your Honor, shows that
2    he is willing to take enormous risks, and it will be very
3    difficult to deter this kind of terrible behavior.
4            The Government is also concerned that the defendant
5    has a huge incentive to disappear, given that the charges carry
6    a 15-year mandatory minimum sentence and the defendant knows
7    that the Government is investigating him for additional crimes.
8    He is almost certain to lose his job as a middle school teacher,
9    providing him with an additional incentive not to stay here.
10            If he is ultimately convicted, he will have to
11    register as a sex offender.  As we just heard in the discussion
12    and in the Pre-Trial Services report, he has over $150,000
13    saved, $130 in cash in a savings account.  There's a real risk
14    that he may disappear.
15            I also want to point out that the Government believes
16    that there is a real risk here of obstruction of -- obstruction
17    of justice and that the defendant could destroy evidence.  He
18    referred to deleting pictures and chats in these Discord
19    messages and he also referred to a burner account.  He's
20    sophisticated, educated, he knows the risks of his conduct.
21    There may be ways that he may try to use this knowledge that he
22    has to either delete accounts remotely, wipe devices, or
23    potentially wipe devices that the Government even has in its
24    possession, but that he may be able to wipe remotely.
25            And I just want to point out, your Honor, that even

Init. App./Bail Hrg.        USA v. Monarchi

1    one child, one additional child, could be harmed if he is let

2    out today and can potentially get access to a phone or a device,

3    and I'll just end, your Honor, with, that no condition of

4    release will stop the damage or ensure his appearance.

5            Thank you.

6            THE COURT:  Okay, thank you very much, counsel.

7            Ms. Quinn?

8            MR. QUINN:  Yes, your Honor.

9            So I'm proposing -- well, first, I agree with

10   Pre-Trial Services and their recommendation that my client be

11   released on conditions, and I've been over those conditions with

12   my client and he would be amenable to all of them.

13           I would propose a $250,000 unsecured bond, co-signed

14   by two financially responsible people, and here, those two

15   financially responsible people would be his parents, who are

16   actually present in the courtroom behind me to your right.  They

17   have both spoken to our paralegal in our office and we believe

18   that they would easily qualify as financially responsible

19   people.

20           So first, in terms of the presumption, I'm loath to

21   remind you of this, but I say it every time, yes, it creates a

22   burden on me, but that can easily rebutted, and then once it is

23   rebutted, it becomes one of the factors to be considered under

24   3143.  Here, I think the fact that his parents are present alone

25   would rebut the presumption of no conditions being permissible,

1    but certainly the information contained in the Pre-Trial

2    Services report would easily rebut that presumption.

3            So then we turn to what conditions -- if there are

4    conditions of release that can reasonably assure the community

5    or the risk for flight.

6            Certainly, the Government has talked about the nature

7    and circumstances of the offense.  Obviously, any offense that

8    involves children is a serious offense.  I've only just received

9    the Complaint; I'm not in a position to really discuss the

10   weight of the evidence.  I will say, the majority of what the

11   Government has said about his danger is based on what is in

12   these allegations and what is alleged to have happened here.

13           I can't help but notice that this report came into

14   NCMEC a year ago.  It came in in October of 2024 where the

15   sister of the victim reported it.  I've done these cases for

16   over ten years; every single time, it's almost always Discord or

17   some sort of online platform that's reporting this to NCMEC.  I

18   have -- I don't think I can recall a single other case where a

19   person reported to NCMEC there is a problem, here is the victim,

20   I am related to them, and it seems like nothing was done.  In

21   fact, nothing seems to have been done until another report

22   happened in Indiana and then once in South Carolina, and all of

23   a sudden, this becomes a real problem and now we have to

24   investigate it.  Even here, the victim was interviewed earlier

25   this month and it's, what, like, the third week of August and

Case 7:25-mj-02616-UA    Document 12    Filed 10/03/25    Page 27 of 42

Init. App./Bail Hrg.        USA v. Monarchi                    27

1  now he's finally being arrested?

2          I also note that the Complaint was signed earlier this

3  week and no one felt the need to rush out and arrest him right

4  away to prevent anything from happening to any other child.

5  That doesn't mean that this isn't serious; I just I think that

6  undercuts the dangerousness argument.  If it could wait this

7  long, perhaps he might not be as dangerous as the Government is

8  suggesting.

9          And I would say, when you look at the factors under

10  3142, he's lived in this community his entire life, he has no

11  ties to any other state or any other country, his parents are

12  present, he has lived with them, he's obviously educated, he

13  doesn't have a drug issue, he has maybe limited mental health,

14  and to the extent that's a concern, that can be a condition of

15  his release.  He has a passport that can be surrendered.  His

16  travel has been relatively minimal in terms of international

17  travel, all related to his education, so I do think that that

18  would speak to that and undercut that.

19          Most importantly, there are conditions that could be

20  set to address the concerns that are listed in the Complaint.

21  Obviously, no contact with any minors.  He would not have any

22  contact.  There is no reason for him to have any contact.

23          I find it interesting that the Government said he's a

24  danger to children because of his job, but he's also a flight

25  risk because he's going to lose that job.  I think it's very

Case 7:25-mj-02616-UA    Document 12    Filed 10/03/25    Page 28 of 42

Init. App./Bail Hrg.        USA v. Monarchi                    28

1    likely he will lose that job.  He will not have any contact with

2    children.  He will have limitations on his internet, his

3    internet would be monitored, so to the extent that there's a

4    concern of him contacting children or using the internet to do

5    that, there are conditions that are speaking to those things.

6            Importantly, although it looks likely that he would

7    lose that job, he does have another job that sounds like it has

8    nothing to do with children.  He could easily do that.  He had

9    worked at a gas station for many years throughout college and

10   likely could do that to support himself.  These restrictions --

11   or, sorry, these conditions proposed by Pre-Trial are stringent

12   and certainly it speaks to the fact that there are conditions

13   that could be set that could make sure that the community is

14   safe and that he's not a flight risk.

15           As I said, he has no ties to anywhere else, there is

16   no evidence to suggest that he would flee, and certainly with

17   his parents monitoring him and him living with his parents, I

18   think that that would alleviate any concerns, so that is our

19   bail package.

20           THE COURT:  Okay.  Thank you, Ms. Quinn.

21           Ms. Reville?

22           MS. REVILLE:  Thank you, your Honor.

23           I'd like to address this in two parts.  First, I'd

24   like to discuss the technology capabilities with Pre-Trial

25   Services.  I mean, the major issue here, your Honor, is that he

Init. App./Bail Hrg.       USA v. Monarchi

1  can easily obtain new electronic devices, open new accounts.

2  The apps, wifi apps, whatever Pre-Trial Services may be able to

3  offer, is just insufficient here.

4        He's sophisticated, he's educated.  We know that he

5  knows about burner accounts.  He references deleting evidence in

6  these chats.  He lives with his parents; he does not live alone.

7  Presumably his parents will have -- continue to have devices.

8  He can easily get a passcode or they can go out and buy him

9  another device.  Someone else can come by the house and purchase

10 him another device.  As good as Pre-Trial Services is, they

11 can't be on him 24/7.  We just don't have the assurances to know

12 that he won't be able to access the internet or another device

13 to continue this type of behavior.

14        We just don't see any combination of conditions that

15 can reasonably assure that he won't be able to get access to a

16 phone.

17        THE COURT:  Well, look, that's true in every case.

18 Frankly.  You know, any time anybody's released on conditions,

19 there is always some risk that they will violate those

20 conditions, but yet people are released on conditions all the

21 time, so it can't simply be that there's a possibility of

22 violation.  That can't be enough to require detention.

23        You made some other points that are more relevant, I

24 think, there, including the sophistication of the defendant, the

25 references in the Complaint to concealing information and burner

1 accounts. You know, that does suggest a level of

2 sophistication, and perhaps ability to and interest in, avoiding

3 detection that perhaps distinguishes this case from some others,

4 so I do understand that point.

5          Why don't you speak to the issue of the timing that

6 Ms. Quinn raised. Because I noticed the same thing, frankly,

7 when I reviewed this Complaint and signed this Complaint earlier

8 in the week, and it did seem somewhat...unusual that there had

9 such a delay between the time that NCMEC had been notified by

10 the sister of victim 1 of her concerns and the time any action

11 was taken.

12          Now, I have no idea when that...that report was

13 conveyed to law enforcement officials, federal law enforcement

14 officials, I mean, you can only act on something when you know

15 about it, so that's, that's one question I have, to the extent

16 you can speak to that, and, you know, the point about waiting

17 from the time that the Complaint was signed or from the time the

18 interview was conducted until now is also a reasonable point to

19 address.

20          So can you speak to either or both of those things?

21          MS. REVILLE: Yes, your Honor, I can speak to both.

22          So first, as to the NCMEC reports, my understanding

23 from reviewing the reports is that victims identified Mr.

24 Teacherman as someone engaging in sexually explicit discussions

25 with minors came up in the course of a separate Government

Init. App./Bail Hrg.        USA v. Monarchi

1   investigation, it came up in some victim interviews, and then

2   was worked on and transferred over to a different FBI unit.  And

3   we've been working with them very closely, and I know that

4   they're diligently working on these types of cases.  I don't

5   think that the timing of a report necessarily should dictate

6   whether the seriousness of these crimes and these, these

7   offenses should determine whether he is detained or not --

8           THE COURT:  Well, it's not -- I mean, look, the

9   seriousness of the offense speaks for itself.  No one's

10  disputing that the offenses are extraordinarily serious.  The

11  question is whether the defendant poses a danger to the

12  community if released, and my question for you is, what, if

13  anything, are we to read into the fact that the Government did

14  not...

15          MS. REVILLE:  Um-hum.

16          THE COURT:  Act with greater alacrity to seek the

17  detention of this defendant.

18          MS. REVILLE:  Yes.

19          THE COURT:  I -- it's, it's a question that comes up

20  in a lot of cases.  It's not like this is the first time it's

21  been raised, but it is something that I often am curious about.

22          MS. REVILLE:  It's a fair question, your Honor, and I

23  think the, the rationale behind the delay actually speaks to why

24  he is a danger to the community, and that is that he took

25  significant steps to cover his tracks.

1              Your Honor, we're aware of three different Discord

2    accounts that the defendant has used.  We're still running down

3    and investigating more details on those particular accounts.

4              The one that we have, the Mr. Teacherman account,

5    those reports came in through NCMEC.  We have seen information

6    related to other accounts.  We've seen at least three different

7    Gmail accounts tied to various accounts that we've seen through

8    Facebook, Instagram, Discord, trying to track down -- trying to

9    retrace his steps and draw all the -- like, connect all the dots

10   here has been challenging.  That speaks to his sophistication

11   with covering his tracks, and I think actually supports the

12   notion that this has been a challenging case to put together and

13   bring to an arrest today.

14             And as your Honor is aware, one of the issues he was

15   tracking -- we were tracking is, we weren't exactly sure which

16   residence was his primary residence.  Was he at mom's house, was

17   he at dad's house.  That did take time to put together, your

18   Honor.  And I think it's important to note that these violations

19   take time and it just takes time to put together a Complaint, to

20   tie all those threads together.  We brought the charges as

21   quickly as we possibly could, as I think your Honor is aware.

22             THE COURT:  Okay.  Anything else that you wanted to

23   add?

24             MS. REVILLE:  I would just add, your Honor, I

25   understand that the defendant has a second job at a gas station.

1          I'll just note, you know, I got a -- I started driving

2   a car when I was 16.  This most recent e-mail that we became

3   aware of as of this morning came from a 17-year-old.  Sixteen

4   and 17-year-olds drive cars; if these are the types of victims

5   that the defendant has been sexually exploiting or having these

6   discussions with, working at a gas station does not mean that he

7   will not have any interaction with potential minor victims.

8          THE COURT:  Okay.  Anything further?

9          MS. REVILLE:  No.  Thank you, your Honor.

10         THE COURT:  All right, thanks very much.

11         Ms. Quinn?

12         MR. QUINN:  Just briefly.

13         I, I don't think that it's fair to draw the conclusion

14  that he was being deceptive and that's what took the delay.  I

15  mean, if I'm reading the Complaint correctly, the same exact

16  Discord name was used in last -- like, this time last year and

17  in February, so I don't think -- I mean, look, I'm not saying

18  that there's not reasonable reasons why things took long --

19         THE COURT:  Right.  I mean, as you know, there are

20  probably thousands of reports to NCMEC, unfortunately, in

21  relatively short periods of time.

22         MR. QUINN:  Sure.

23         THE COURT:  I, I take your point, Ms. Quinn, but --

24         MR. QUINN:  I just don't want to jump to the

25  conclusion, like, oh, he's so deceptive and that's what took so

1   long.  I don't think that that's a fair conclusion that can be

2   drawn from the facts that are in the Complaint and the facts

3   that are before your Honor.  I think that there may be other

4   things at play which may be totally reasonable, but I don't

5   think that that can be put at his footsteps.

6            And with respect to the job, I mean, he can work with

7   Pre-Trial.  It's just, it's helpful that he at least has another

8   option.  Potentially.

9            THE COURT:  Understood.

10           Okay, I'm going to take a short recess.  I'm going to

11  speak with Ms. Harrison in the robing room.  Everyone can stay

12  seated.  I'll be back shortly.

13           (Recess taken)

14           THE COURT:  All right, let me start off by saying that

15  I have considered all the materials that have been presented to

16  me in this case, including the Complaint; the Pre-Trial Services

17  report, which does recommend that Mr. Monarchi be released,

18  subject to a series of conditions; and, also, of course, the

19  arguments of counsel.

20           Now, Mr. Monarchi, I'll -- let me review the factors

21  and the framework of the law that governs this decision.

22           I am required under the law to release you, either

23  with or without conditions imposed, unless I determine that

24  there are no conditions that will reasonably assure your

25  appearance in court as required and the safety of the community.

1          In making a bail determination, I must consider the

2  following factors, which you've heard discussed here today:

3  first, the nature and the circumstances of the offense charged;

4  next, the weight of the evidence against you; third, your

5  history and characteristics, which includes a number of

6  different factors; and, finally, the nature and seriousness of

7  the danger to any person or the community that would be posed by

8  your release.

9          As you've heard, and there's really no dispute about

10  this, this case is what's called a presumption case, meaning

11  there are factors at play here that create a presumption of

12  detention under the circumstances presented.  Again, that

13  presumption is rebuttable and is not the only factor that is to

14  be considered.  And I will review all the factors and

15  considerations that go into this decision as I render the

16  decision in full here today, but I will just say at the outset

17  that in this case, I find that the Government has met its burden

18  of establishing that there are no conditions I can impose that

19  will reasonably assure your appearance in court and the safety

20  of the community, which means that you will be detained

21  following this proceeding here today.  I make this decision

22  based on all of the information that has been presented and

23  considering all the factors set forth in Title 18 U.S. Code §

24  3142(g).

25          So with respect to the presumption, as I said, there

Init. App./Bail Hrg.        USA v. Monarchi

1 is a rebuttable presumption in favor of detention, and with
2 respect to that presumption, I find that you, Mr. Monarchi, have
3 put forward sufficient evidence to rebut the presumption.  That
4 is based in part on the Pre-Trial Services report.  It's also
5 based, in part, on the presence of your family members here
6 today.  I do acknowledging that your parents are here today.  I
7 thank you for being here and for being available to support Mr.
8 Monarchi during this proceeding, but ultimately, I do find that
9 the Government has met its burden both with respect to danger to
10 the community and risk of flight.
11        First, the nature and the circumstances of the offense
12 charged here are obviously serious.  It's the nature and the
13 circumstances of the offense that give rise to the presumption
14 of detention.  There is a course of conduct described in the
15 Complaint that took place over a period of weeks with respect to
16 one victim.  That is the basis for the charge in Count One,
17 sexual exploitation of a child.  There really can be no
18 question, and there hasn't really been any argument, that the
19 nature and seriousness -- the nature and circumstances of the
20 offense charged are serious and that those point in favor of
21 detention.
22        The weight of the evidence against you, as proffered
23 by the Government, appears quite strong.  Now, again, obviously,
24 this is not a proceeding to determine your guilt or lack of
25 guilt with respect to these charges, but as set forth in the

1  Complaint and as articulated further during the course of

2  today's proceedings, the weight of the evidence against you does

3  appear to be strong.  That is a favor -- a factor that points in

4  favor of detention.

5          As far as history and characteristics, these are the

6  factors that make this a difficult decision, and these factors,

7  in some ways, do point in favor of release.

8          You don't have any criminal history; therefore, of

9  course, no prior participation in criminal activity while on

10  probation, parole, or supervision.  There's no history of

11  violence or threats of violence or use of weapons reported

12  anywhere in the Pre-Trial Services report or the arguments of

13  the parties here today.

14          You do, obviously, have family and community ties to

15  the Southern District of New York, you've lived in this district

16  for your entire life, and your family is here to support you

17  here today, so those factors do point in favor of release in

18  certain respects.

19          You don't have any history of drug or alcohol abuse.

20  You have a history of employment, although that will be

21  compromised, of course, by this arrest, and there's no issue of

22  prior attendance or appearance at court proceedings.

23          The, the overall picture here, though, is troubling,

24  of course, the nature and seriousness of the offense we've

25  talked about, and there was emphasis during the proceeding

1   placed on some of the allegations in the Complaint where you

2   did, Mr. Monarchi, acknowledge that you were at risk at -- in,

3   in engaging in these communications.  You, you noted, again, as

4   alleged, of course, none of this is proven, it's just as

5   alleged, that you allegedly stated to victim 1 that the account

6   through which you were communicating was not your normal Discord

7   account, you don't always leave this logged in because it's

8   obviously not ideal to have this accessible.  That's paragraph

9   5E of the Complaint.  And there are references to not sharing

10  certain pictures or not having your picture associated with

11  certain things because of your position.

12          As the Government pointed out in its argument, there's

13  an awareness here, a level of sophistication, regarding

14  detection, and, potentially, avoiding detection, that that gives

15  the Court great cause for concern.

16          As I noted in the colloquy with counsel, the fact that

17  it is possible for a person to obtain a device to, to avoid

18  detection by Pre-Trial Services is not in and of itself a reason

19  to discard the recommendation of Pre-Trial Services, which I

20  always do take very, very seriously.  If that were sufficient,

21  then nobody would ever be released on bail.  But here, there are

22  factors that give the Court pause with respect to the likelihood

23  of your compliance with conditions of release.  Even though you

24  don't have any criminal history and so, therefore, no documented

25  examples of non-compliance with court-imposed conditions, the

Case 7:25-mj-02616-UA    Document 12    Filed 10/03/25    Page 39 of 42

Init. App./Bail Hrg.        USA v. Monarchi                    39

1   level of sophistication that is apparent in the allegations in

2   this Complaint is enough of a concern to, to point in favor of

3   detention.

4        This also is a case, as put forward, as proffered by

5   the Government here today, where, while there's only one charge

6   involving a single victim, the Complaint itself references

7   multiple other victims.  There have been proffered -- there's

8   evidence that's been proffered about two additional victims

9   outside the three who were named or identified in the Complaint

10  and another victim who allegedly has come forward as recently as

11  this afternoon who's made allegations regarding conduct that

12  took place, apparently, as recently as this summer.

13       Now, of course, those are all allegations and there's

14  not even any detail provided based on the allegations in the

15  Complaint, so it's impossible for you to even attempt to rebut

16  those allegations, but, again, we're dealing here with the

17  Government's proffer with respect to evidence and what's been

18  found in the course of the investigation, and it is well

19  established that the Court may rely on proffered evidence as

20  part of a bail determination, so all those factors suggest that

21  the charge with respect to victim 1 is not a single instance or

22  a single slip in conduct or an aberration in conduct, and that

23  gives rise to a significant concern that your release would pose

24  a danger to other persons or the community and that the

25  Government has met its burden to show that by clear and

Case 7:25-mj-02616-UA    Document 12    Filed 10/03/25    Page 40 of 42

Init. App./Bail Hrg.        USA v. Monarchi                    40

1  convincing evidence.

2          With respect to risk of flight...it's a closer call

3  even than the danger-to-the-community analysis, because, again,

4  as Ms. Quinn pointed out, you have lived in this community for

5  your entire life.  The idea of picking up and fleeing the

6  community is a difficult thing to contemplate for anybody, but

7  here, there are a couple of factors that suggest that such

8  flight is, is a significant risk to consider.

9          One is that you do have financial resources to

10 facilitate flight and evasion of detection, and the other is

11 that you do face, at least as charged currently, a potentially

12 very serious prison term as charged, potentially a 15-year

13 mandatory minimum sentence, based on the conduct that's alleged

14 in the Complaint, and that is potentially a very significant

15 motivation to flee, especially for somebody who has never served

16 any time in prison before.

17         So for those reasons, I find that the Government has

18 also met its burden by a preponderance of the evidence to show

19 that if you were to be released, there would be a substantial

20 risk of non-appearance in court.

21         And I have considered all reasonable less-restrictive

22 alternatives, including the alternatives proposed by Pre-Trial

23 Services.  It is a long and thorough list of potential

24 conditions of release, but on balance, for all the reasons that

25 I have discussed here today, I do not find those to be

Case 7:25-mj-02616-UA    Document 12    Filed 10/03/25    Page 41 of 42

Init. App./Bail Hrg.        USA v. Monarchi                    41

1   sufficient to outweigh the Court's concerns, so for those

2   reasons, Mr. Monarchi will be remanded to the custody of the

3   Attorney General for confinement in a corrections facility that

4   is separate, to the extent practicable, from persons awaiting or

5   serving sentences or being held in custody pending appeal.

6           Mr. Monarchi must be afforded a reasonable opportunity

7   for private consultation with defense counsel, and on order of a

8   court of the United States or on request of an attorney for the

9   Government, the person in charge of the corrections facility

10  must deliver Mr. Monarchi to a United States Marshall for the

11  purpose of an appearance in connection with a court proceeding.

12          And, of course, you do have a right to appeal this

13  decision to a district judge, Mr. Monarchi, should you and Ms.

14  Quinn, or any future attorney representing you in this matter,

15  decide that that is in your best interest to pursue that option.

16          Ms. Quinn, are there any medical needs that I should

17  include in a detention order?

18          MR. QUINN:  No, your Honor.

19          THE COURT:  Okay.

20          Ms. Reville, anything further from the Government's

21  perspective?

22          MS. REVILLE:  I think the one more administrative

23  matter, your Honor, is that the Complaint no longer needs to

24  remain sealed.

25          THE COURT:  Right, and it's automatically been

Case 7:25-mj-02616-UA    Document 12    Filed 10/03/25    Page 42 of 42

Init. App./Bail Hrg.        USA v. Monarchi                    42

1  unsealed --

2           MS. REVILLE:  Oh, thank you, your Honor.

3           THE COURT:  -- by operation of the arrest, but thank

4  you.

5           MS. REVILLE:  Thank you, your Honor.

6           THE COURT:  Okay.

7           Ms. Quinn, anything further from Mr. Monarchi's

8  perspective?

9           MR. QUINN:  No, your Honor.

10          THE COURT:  Okay.  In that case, we'll stand

11 adjourned.

12          Take care, everybody.

13

14 Certified to be a true and accurate

15 transcript of the digital electronic

16 recording to the best of my ability.

17 _____

18 Tabitha R. Dente, RPR, RMR, CRR

19 U.S. District Court

20 Official Court Reporter

21

22

23

24

25