

*Jason I. Ser*
*Partner*
Direct (646) 539-3712
Fax (212) 655-3535
jis@msf-law.com

December 8, 2025

**VIA ECF**

The Honorable Andrew E. Krause
United States Magistrate Judge
300 Quarropas Street
White Plains, New York 10601

    Re:    *United States v. Daniel Monarchi*, 25-mj-2616

Dear Judge Krause:

    We represent defendant Daniel Monarchi in the above-captioned case. We write to move to reopen Mr. Monarchi's detention hearing and for his pretrial release pursuant to the least restrictive combinations of conditions that can reasonably assure the safety of the community and his appearance in this case. *See* 18 U.S.C. §§ 3142(c), (f).[1]

## I.    The Government Cannot Meet Its Burden Under the Bail Reform Act

    We respectfully submit that the following conditions are sufficient to reasonably assure Mr. Monarchi's appearance during this case and ameliorate any risk of future dangerousness asserted by the government:

(1)    A $500,000 bond co-signed by five financially responsible people, including Mr. Monarchi's mother, father, two uncles, and aunt, secured in full by real property belonging to Mr. Monarchi's mother, and;

(2)    Home incarceration at the home of Mr. Monarchi's mother in Red Hook, New York, which is in Dutchess County, with electronic monitoring; only travel outside the house would be for pre-arranged medical and legal visits, as authorized by Pretrial Services;

---

[1] Mr. Monarchi is being held without bail pursuant to this Court's August 22, 2025 order of detention. *See* ECF No. 3. A one-count Complaint charges him with violating 18 U.S.C. § 2251(a), sexual exploitation of a minor. *See* ECF No. 2. The Court conducted a bail hearing at Mr. Monarchi's initial appearance and ordered him detained pursuant to 18 U.S.C. § 3142, *see* ECF No. 3, finding based upon the parties' proffers that "that the Government has met its burden of establishing that there are no conditions I can impose that will reasonably assure your appearance in court and the safety of the community." Aug. 22, 2025 Transcript of Initial Appearance & Bail Hearing ("Trans.") at 35.

    (3)    Surrender of any travel documents, and an agreement not to secure new travel documents;

    (4)    Pretrial Services supervision as directed; and,

    (5)    Electronic devices limited to a single cellular telephone that has no ability to access the internet and is monitored by Pretrial Services; all other people living in the home will maintain their electronic devices as password protected, would attest that they will not share the passwords with Mr. Monarchi, and would not leave their electronic devices unattended or accessible to Mr. Monarchi when at home (they would use a lock box to secure them) or upon leaving the residence (they would take the devices with them or leave secured in a lock box).

## II.    This Court Should Exercise Its Discretion to Reopen the Detention Hearing Pursuant to 18 U.S.C. § 3142(f)

Mr. Monarchi moves pursuant to 18 U.S.C. § 3142(f) to reopen his detention hearing based upon new and material information that only became known after this Court's August 22, 2025 determination that he should be detained. Section 3142(f) authorizes the Court to reopen a detention hearing even after it has determined that detention may be warranted "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."[2] 18 U.S.C. § 3142(f). The Bail Reform Act leaves the decision to reopen a detention hearing based upon new and material information to the discretion of the court. *See e.g.,*

---

[2] "The Court can also revisit its own bail decisions as an exercise of its inherent authority, even if the defendant's proffered new evidence does not meet the statutory standard for reopening the decision." *United States v. Kwok*, No. 23-CR-118 (AT), 2024 WL 54170, at *2 (S.D.N.Y. Jan. 4, 2024); *see also United States v. Maxwell*, 510 F. Supp. 3d 165, 169 (S.D.N.Y. 2020) (holding that a court may also revisit its own decision pursuant to its inherent authority, even where the circumstances do not match § 3142(f)'s statutory text); *United States v. Petrov*, No. 15-CR-66 (LTS), 2015 WL 11022886, at *3 (S.D.N.Y. Mar. 26, 2015) (noting the "Court's inherent authority for reconsideration of the Court's previous bail decision"); U*nited States v. Rowe*, No. 02-CR-756 (LMM), 2003 WL 21196846, at *1 (S.D.N.Y. May 21, 2003) (noting that "a release order may be reconsidered even where the evidence proffered on reconsideration was known to the movant at the time of the original hearing.").

*United States v. Zhang*, 55 F.4th 141, 148 (2d Cir. 2022) (emphasizing that Bail Reform Act leaves decision to reopen detention hearing upon new and material information to discretion of court); *see also United States v. Singh*, No 25-MJ-135, 2025 WL 1381524 (S.D.N.Y. May 13, 2025) (Reznik, M.J., same).

When deciding whether to reopen a detention hearing, "[a] court's prior detention determination is a natural reference point against which to measure the materiality of new information for the purpose of reopening the hearing—that is, revisiting its earlier decision." *Zhang*, 55 F.4th at 148. For purposes of considering whether to reopen a detention hearing, "new and material information ... consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event." *United States v. Rodriguez*, No. 15-MJ-02956, 2015 WL 6503861, at *1 (S.D.N.Y. Oct. 26, 2015) (denying defendant's request to reopen detention hearing because information was neither new nor weighed on factors court considered in detaining defendant) (quoting *United States v. Ali*, No. 12cr45S, 2012 WL 2921642, at *3 (W.D.N.Y. July 17, 2012)) (internal quotation marks omitted).

Mr. Monarchi relies on two forms of new and material information in support of his motion to reopen the detention hearing in this case. First, the weight of the evidence has changed in a material way and that bears on the safety of the community. Put simply, the government apparently has not located evidence corroborating its proffered claims at the August 22, 2025 detention hearing that "there are other victims beyond those that are referenced in the Complaint." Trans. at 19-20. This lack of evidence is new information that was previously unavailable and relates to factual claims material to the Court's decision to detain Mr. Monarchi. Second, Mr. Monarchi presents the Court with a more substantial bail package to secure his release, including conditions requiring a half-million-dollar bond that is *fully* secured by real property belonging to his family and the signatures of *five* financially responsible adults. Information bearing on the willingness of family members other than Mr. Monarchi's parents to act as sureties and the extent of real property available to secure any proposed bond was not known to defense counsel at the time of the August 22, 2025 detention hearing.

In support of its motion to detain, the government proffered at the August 22, 2025 hearing that it "has evidence that the defendant has also engaged in similar conduct with multiple other victims, which the Government continues to investigate." Trans. at 18-19. Signaling its concern about these unsworn allegations of exploitation beyond that alleged in the Complaint, the Court interrupted and asked, "You mentioned that the Government has evidence regarding multiple other victims….[d]o you mean there are other victims beyond those that are referenced in the Complaint?" *Id.* at 19-20. The government responded affirmatively and informed the Court it has "evidence related to two additional [minor] victims outside of the three in the Complaint. We're

still working on getting interviews with those victims and tracking down evidence there."[3]  *Id.* at 20.  Any doubt that the government's proffer about "additional victims" impacted the factors weighed by the Court in ordering Mr. Monarchi detained vanished when the Court explained its decision.

> The **weight of the evidence against you, as proffered by the Government**, appears quite strong.  Now, again, obviously, this is not a proceeding to determine your guilt or lack of guilt with respect to these charges, but as set forth in the Complaint **and as articulated further during the course of today's proceedings**, the weight of the evidence against you does appear to be strong.  That is a favor -- **a factor that points in favor of detention**.

*Id.* at 36-37 (emphases added).  By stating that the allegations in the Complaint as well as those "articulated" at the detention hearing made the "weight of the evidence" factor "strong" and one that "points in favor of detention," the Court necessarily relied upon the facts identified in the government's proffer when it decided to order Mr. Monarchi detained.  *See also id.* at 39 (explaining during decision to detain that "This also is a case, as put forward, as proffered by the Government here today, where, while there's only one charge involving a single victim, the Complaint itself references multiple other victims.  There have been proffered – there's evidence that's been proffered about two additional victims outside the three who were named or identified in the Complaint and another victim who allegedly has come forward as recently as this afternoon who's made allegations regarding conduct that took place, apparently, as recently as this summer.").

Since appearing on Mr. Monarchi's behalf in this matter, undersigned counsel has periodically contacted the government regarding the status of its "investigation" into its proffered claim that there are "multiple other victims" and whether it has conducted "interviews… and track[ed] down evidence" to corroborate this assertion.  *Id.* at 18-19.  During a September 25, 2025 call, approximately one month after the detention hearing, the government informed undersigned counsel that it was still looking into the existence of additional victims and represented that its investigation remained "ongoing at this point."  The government never indicated during this call that it located evidence consistent with its factual proffer at the detention hearing on August 22, 2025.  During a November 25, 2025 call, approximately three months after the detention hearing, the government again informed undersigned counsel that its investigation remained ongoing.  The government never indicated during this call that it obtained evidence consistent with its factual proffer at the detention hearing on August 22, 2025.  To be transparent, undersigned counsel specifically informed the government during the November 25, 2025 call that the defense intended to file the instant motion to reopen the detention hearing based on the weight of the evidence factor changing due to the lack of corroboration that "there are other victims beyond those that are

---

[3] By specifically referencing "victims," the government appears to have proffered that Mr. Monarchi exploited minors not identified in the Complaint to produce visual depictions.

referenced in the Complaint." *Id.* at 19-20. Notwithstanding defense counsel's disclosure, the government still did not indicate during this call that it obtained evidence to corroborate its factual proffer about "additional victims" at the detention hearing on August 22, 2025.

The government's apparent inability to locate or obtain evidence corroborating that there are "multiple other victims" of exploitation as it claimed at the detention hearing three months ago undermines proffered (unsworn) facts that were material to this Court's decision to order Mr. Monarchi detained. Mr. Monarchi was unable to address these proffered claims at his detention hearing on August 22, 2025 because the Complaint alleged nothing in this regard. The Court acknowledged during the detention hearing that it was "impossible" for Mr. Monarchi "to even attempt to rebut those allegations" at the time because there is "not even any detail provided based on the allegations in the Complaint." Trans. at 39. The Court explained, however, that it could and would "rely on proffered evidence as part of a bail determination." *Id.*

> Now, of course, those are all allegations and there's not even any detail provided based on the allegations in the Complaint, so it's impossible for you to even attempt to rebut those allegations, but, again, we're dealing here with the Government's proffer with respect to evidence and what's been found in the course of the investigation, and it is well established that the Court may rely on proffered evidence as part of a bail determination, so all those factors suggest that the charge with respect to victim 1 is not a single instance or a single slip in conduct or an aberration in conduct, and that gives rise to a significant concern that your release would pose a danger to other persons or the community and that the Government has met its burden to show that by clear and convincing evidence.

*Id.* at 39-40. The absence of such evidence at this time diminishes the weight of the evidence prong, which the Court previously characterized as "strong" and "a factor that points in favor of detention." *Id.* at 37; *see also id.* at 35 ("I make this decision based on all of the information that has been presented and considering all the [§ 3142(g)] factors").

Make no mistake, this is not a situation where Mr. Monarchi is merely "consider[ing] whether the previously known information [about the strength of the evidence against him] is weak or strong." *United States v. Acevedo-Baldera*, No. 18-CR-00155 (AWT), 2020 WL 9156933, at *5 (D. Conn. Nov. 23, 2020). Nor is it his "own evaluation of…the strength of the case against him." *Rodriguez*, 2015 WL 6503861, at *1. It is a "truly changed circumstance[], something unexpected, [and] a significant event" that warrants reopening the detention hearing. *Id.*; *see also United States v. Jones*, 583 F. Supp. 2d 513 (S.D.N.Y. 2008) (finding that the weight of the evidence had sufficiently changed to warrant reconsideration of the prior detention order, and to rebut the presumption of detention, because new documentary evidence was presented after the detention hearing which directly contradicted the testimony of an eyewitness at the detention hearing regarding the defendant's presence at the crime scene); *United States v. Torres*, 435 F. Supp. 2d 179 (W.D.N.Y. 2006) (granting the defendant's motion to reopen the detention hearing where one of the cooperating witnesses, upon whose testimony the Court relied in detaining the

defendant, had admittedly been discredited thus, weakening the government's case against that defendant; but, upon reopening, continuing the defendant's detention)

In addition to a change in the weight of the evidence factor, Mr. Monarchi also presents the Court with a considerably more substantial bail package to secure his release. The bail package Mr. Monarchi now proposes is based in part upon new information that was not available to his prior defense counsel for use at the August 22, 2025 detention hearing. It is undersigned counsel's understanding that the detention hearing occurred late Friday afternoon and Mr. Monarchi's prior defense counsel did not have an opportunity to speak with his parents about their ownership of real property, the value of property they owned, the existence of any mortgages, or the use of that property to secure the bond. Through no fault of her own, his prior defense counsel also did not have the opportunity to investigate the existence of extended family members who may have been willing to act as sureties in the case or to interview them.[4] As a result, prior defense counsel "propose[d] [release on] a $250,000 unsecured bond, co-signed by two financially responsible people, and here, those two financially responsible people would be his parents."[5] Trans. at 25.

The bail package being proposed here differs significantly. First, Mr. Monarchi proposes release on a personal appearance bond in an amount of $500,000, double that suggested at the prior detention hearing. *Id.* In addition, Mr. Monarchi proposes that the bond be fully secured by real property belonging to Mr. Monarchi's family. The family proposes as collateral a residential property located in Red Hook, New York. This home is owned by Mr. Monarchi's mother, Jennifer Monarchi, who currently resides at the property with Mr. Monarchi's younger brother (where Mr. Monarchi lived prior to arrest). She and Mr. Monarchi's father, Alan Monarchi, jointly owned the property until November 2, 2012, prior to their separation. Undersigned counsel has a copy of the recorded deed and, in lieu of filing those sensitive documents on the docket, can share them with the government and the Court upon request. The deed paperwork indicates that the mortgage is paid and was fully discharged on November 8, 2021. Thus, Mr. Monarchi's mother owns her home free and clear. According to multiple real estate estimates (attached as Exhibit A), the property's value ranges from $609,000 to $772,000, with an average estimated value of approximately $690,000. According to the recent 2025 Assessment Notification from the County of Dutchess, Town of Red Hook, which undersigned counsel has and can share on request, the assessed tax value of the property is $566,300. Considering its value and the lack of any mortgage,

---

[4] Undersigned counsel has now had to an opportunity to do these things. *Compare Singh*, 2025 WL 1381524, at *2 (finding "no support for the proposition that [Singh's] ability to post an increased bond is sufficiently new information for purposes of reopening his bail hearing" because Singh's "ability to post a bond larger than his originally proposed amount" was known at the time of the detention hearing).

[5] It is counsel's understanding that Pretrial Services also recommended Mr. Monarchi's release on a $250,000 personal recognizance bond secured by two signatures with other conditions of supervision.

Mr. Monarchi's mother has equity in well excess of the proposed $500,000 bond. Mr. Monarchi also proposes more than twice the number of sureties to secure the bond, five—not just two—all of whom will be immediate or extended family members.

### III. The Court Can Release Mr. Monarchi on a Combination of Conditions that Can Reasonably Assure the Safety of the Community and His Appearance in this Case

The Bail Reform Act of 1984 requires pretrial release on a personal recognizance bond "unless the [Court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). In making this determination, the Court should consider the following factors: "(1) the nature and circumstances of the offense charged . . .; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* at § 3142(g). Even if the Court finds that release on the defendant's personal recognizance creates a risk of flight or a danger to the community, the law still favors pretrial release "subject to the least restrictive further condition, or combination of conditions, that [the Court] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B); *accord United States v. Zherka,* 592 F. App'x 35, 36 (2d Cir. 2015) (quoting *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007)).

Although there is a presumption of detention as to Mr. Monarchi under the Bail Reform Act in this case, *see* 18 U.S.C. § 3142(e)(3)(E), he "bears a limited burden of *production*, not a burden of persuasion, to rebut that presumption by coming forward with evidence 'that contradicts notions of light risk or dangerousness.'" *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) (emphasis added). Once rebutted, the presumption continues to be weighed with other factors affecting the decision to release or detain him pursuant to 18 U.S.C. § 3142(g).[6] *See United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991). Even in a presumption case, "the government retains the burden of persuasion." *Id.* In other words, the government must ultimately persuade the court by a preponderance of the evidence that the defendant is a risk of flight or by clear and convincing evidence that the defendant is a danger to the community, *Mercedes*, 254 F.3d at 436, and that there are no "conditions or a combination of conditions" to ameliorate those risks. 18 U.S.C. § 3142(c)(1), (f). "Because pre-trial release is 'generally favor[ed]' over detention, the Government holds the ultimate burden of persuasion," even in a presumption case. *United States v. Acevedo-Baldera*, No. 18-CR-00155 (AWT), 2020 WL 9156933, at *4 (D. Conn. Nov. 23, 2020); *see also United States v. Shakur*, 817 F.2d 189, 195 (2d Cir.), *cert. denied*, 484 U.S. 840, 108 S.Ct. 128, 98 L.Ed.2d 85 (1987) ("The Second Circuit has warned that, in applying these factors to any particular case, 'the court should bear in mind that it is only a "limited group of offenders" who should be denied bail pending trial.'"). Considering how the weight of the evidence factor has changed and the substantial secured bail package now being proposed, the

---

[6] The Court concluded that Mr. Monarchi rebutted this presumption at the initial detention hearing on August 22, 2025, citing the Pretrial Services report and his parents' presence at the proceeding. *See* Trans. at 35-36.

government cannot satisfy its burden of persuasion here.

By all accounts, Mr. Monarchi has a spotless record prior to this case. He has no criminal history. *See* Trans. at 37. He has never had contact with law enforcement. He has no history of violence, or threatening conduct. *Id.* And there are no allegations of violence against him now. *Id.* While Mr. Monarchi is charged with an offense related to the production of child pornography, that itself does not amount to an unmitigated risk of future dangerousness. He has never touched a minor inappropriately. He has never sought to meet in person with a minor for any illegal purpose. The government does not allege otherwise in the Complaint and made no such claims during their proffer to the Court at the initial detention hearing on August 22, 2025. *Id.*

Mr. Monarchi also does not present an unmitigated risk of flight. Mr. Monarchi was born in Putnam County and grew up in Dutchess County. As a lifelong resident of that area, he has strong ties there and nearby: close family who is willing to risk their home and their family's financial wherewithal on Mr. Monarchi's bail because they know he would not flee. That overwhelming moral suasion is more than sufficient. Because the government cannot meet its burden of demonstrating that there are no "condition, or combination of conditions" that will "reasonably assure" the Court, Mr. Monarchi's release is required under the Bail Reform Act. *See* 18 U.S.C. § 3142(c), (f).

The law is clear: "it is only a limited group of offenders who should be denied bail pending trial." *United States v. Madoff*, 586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009) (quotation marks and citations omitted); *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986) (pretrial detention is a drastic measure, narrowly reserved for "extreme case[s]"); *United States v. Scarpa*, 815 F. Supp. 88, 91 (E.D.N.Y. 1993) (pretrial detention "has been and should remain the exceptional practice") (emphasis supplied). Mr. Monarchi is not one of them. This Court should order his pretrial release on the proposed substantial bail conditions presented.

## IV. Mr. Monarchi's Bail Package Ameliorates Any Flight Risk or Danger to Other Persons or the Community

### A. *The Proposed Conditions of Release Reasonably Assure the Safety of the Community*

Mr. Monarchi is charged in a Criminal Complaint with one count of exploitation of a minor in violation of 18 U.S.C. § 2251(a). He was arrested at his mother's home without incident on August 22, 2025. The single count in the Complaint relates to alleged online contacts that Mr. Monarchi had with three minors. The Complaint alleges that he solicited two of those minors to send him images or videos. Importantly, the Complaint does not allege whatsoever that any in-person contacts occurred—***ever***. The government also never claimed at the detention hearing that Mr. Monarchi attempted to meet in person with the minors identified in the Complaint, or any others for that matter. Indeed, Mr. Monarchi has no history of violence; he has no criminal history at all.

---

Courts in this Circuit have routinely set bail for defendants charged in child pornography offenses. *See United States v. Egelman*, No. 22-CR-0375 (JS) (E.D.N.Y. 2022) (releasing defendant charged with possession of child pornography); *United States v. Fitzsimmons*, No. 21-CR-0591 (JS) (E.D.N.Y. 2021) (releasing defendant charged with distribution of child pornography); *United States v. Belcher*, No. 21-mj-1596 (S.D.N.Y. 2022) (defendant charged with child pornography offenses released on bond, with consent of the government); *United States v. Pamperien*, No. 20-CR-275 (NSR) (S.D.N.Y. 2020) (defendant charged with child pornography offenses released on bond); *United States v. Tassone*, No. 19-CR-910 (NSR) (S.D.N.Y. 2019) (defendant charged with child pornography offenses released on bond, with consent of the government); *United States v. Campos*, No. 17-CR-525 (CS) (S.D.N.Y. 2017) (defendant charged with child pornography offenses released on unsecured personal recognizance bond); *United States v. Szucs*, No. 17-CR-373 (KMK) (S.D.N.Y. 2016) (defendant charged with child pornography offenses released on unsecured personal recognizance bond).

Indeed, even in cases that include allegations of more serious sexual offenses, including circumstances involving actual contact with a minor, defendants are frequently released on conditions similar to those proposed here. *See, e.g., United States v. Fletcher*, No. 21-CR-227 (ERK) (E.D.N.Y. 2021) (releasing defendant on stringent conditions of home incarceration, telephonic monitoring, with three sureties, where defendant was charged with sex tourism involving minors in violation of 18 U.S.C. § 2423); *United States v. Daskal*, No. 21-CR-110 (E.D.N.Y. 2021) (defendant charged with enticing a minor to engage in sexual activity and transporting the minor across state lines for the purpose of engaging in sexual activity, and released on conditions similar to those proposed here); *United States v. Galarza*, No. 19-CR-508 (BMC) (E.D.N.Y. 2019) (defendant released on bond, although charged with the presumption offenses of 18 U.S.C. § 2251(c) (sexual exploitation of a child), § 2251(e) (conspiracy and attempt to sexually exploit a child), § 2252(a)(1) (transportation of child pornography) and § 2252(a)(3)(B) (sale of child pornography)); *United States v. Hadden*, No. 20-CR-468 (S.D.N.Y. 2020) (defendant, a doctor charged with sexually abusing his patients, including at least one minor, over a 20-year period, released on bail requiring three co-signers, secured by the defendant's primary residence, GPS monitoring, associational bars with the victim, and travel restrictions); *United States v. Morin*, No. 10-CR-506 (N.D.N.Y. 2010) (defendant charged with "sexual enticement of a minor," the court released the defendant pursuant to a $100,000 personal recognizance bond, secured by two properties, travel restrictions, and associational bars with the victim); *United States v. McDarrah*, No. 05-CR-1182 (S.D.N.Y. 2005) (defendant was charged with enticing a minor to engage in sexual activity, and released pursuant to a personal recognizance bond co-signed by two sureties, partially secured by $5,000 in cash, associational bars with the victim, and significant travel restrictions). So too bail should be set for Mr. Monarchi accordingly.

In any event, the substantial bail package proposed is tailored to mitigate any lingering risk. Mr. Monarchi will be confined to his mother's home in Red Hook, New York, other than for legal and medical visits. His cellular telephone will not have internet access, and all use will be monitored by Pretrial Services' monitoring software, precluding him from engaging in any behavior similar to that alleged in the Complaint. He will have little opportunity to commit future crimes. *United States v. Esposito*, 309 F. Supp. 3d 24, 31 (S.D.N.Y. 2018) (ordering defendant's

pretrial release subject to strict conditions as the "danger Esposito poses to the community can be reasonably mitigated by conditions of release," although finding that "there is sufficient evidence that Esposito has significant involvement and influence in violent activities"); *United States v. Dreier*, 596 F. Supp. 2d 831, 833-35 (S.D.N.Y. 2009) (releasing defendant on substantial conditions, including home confinement, and a $10 million personal recognizance bond, despite finding "that [the defendant], if released without conditions, would pose a genuine risk. . . .").

Nor would he—doing so would risk financial ruin to his mother and father, who have offered to act as sureties with the former offering to post her property to secure the bond,[7] as well as several extended family members.  Mr. Monarchi's parents, uncles, and aunt all work hard to support their families.  His mother is a full-time social worker at a local nursing home.  Mr. Monarchi's father is employed full-time as a computer programmer.  Jointly, they continue to support Mr. Monarchi and his younger brother, the latter of whom still lives at the same home for the last twenty-four years that their mother has offered to post.  The mortgage-free residence is valued between approximately $609,000 to $772,000.  The uncle and aunt willing to act as sureties own a restaurant in Pennsylvania, which they have built for years to reach the financial stability they rely upon to support themselves and their three children.  The other uncle willing to act as a surety is the corporate financial officer for a privately held capital equipment manufacturer and professional services provider.  He, too, supports a family with children.  Mr. Monarchi would not squander the support of his immediate or extended family.  The risk of financial ruin to the sureties provides powerful moral suasion for Mr. Monarchi. *See e.g., United States v. Batista*, 163 F. Supp. 2d 222, 224 (S.D.N.Y. 2001) ("Appropriate factors to consider when weighing whether a proposed suretor exercises moral suasion vary from case to case, but may include the strength of the tie between the suretor and defendant (i.e. family or close friend, close or estranged), the defendant's roots in the community, and the regularity of contact between suretor and defendant"); *United States v. Sierra*, No. 99-CR-962, 1999 WL 1206703 (S.D.N.Y. Dec. 16, 1999) (in a presumption case, granting bail based, in large part, on the moral suasion exerted by friends and family acting as bail suretors).

The substantial bail package, with deterrent conditions, and powerful moral suasion effectively addresses any risk of dangerousness that Mr. Monarchi's release could pose.  The government "ha[s] not proven by clear and convincing evidence that no conditions could be set that reasonably assure the safety of the community." *United States v. Paulino*, 335 F. Supp. 3d 600, 615 (S.D.N.Y. 2018) ("while the Government has shown that Paulino presents some danger to the community, they have not proven by clear and convincing evidence that no conditions could be set that reasonably assure the safety of the community").

---

[7] Mr. Monarchi's father would do the same, but for the limited equity he has in the property, which he purchased in 2021.

### B.  *Mr. Monarchi Does Not Pose an Unmitigated Risk of Non-Appearance*

The government similarly cannot bear its burden of demonstrating by a preponderance of the evidence that there are no "conditions or a combination of conditions which reasonably will assure the presence of the defendant at trial if he is released."[8] *United States v. Shakur*, 817 F.2d 189, 194-95 (2d Cir. 1987).

Mr. Monarchi is a lifelong New York resident with strong ties to the Dutchess County area where he grew up. Mr. Monarchi's parents moved from Stormville (in Dutchess County) to Red Hook, New York, in 2001, just before his younger brother was born. Mr. Monarchi's parents, who separated in 2012, raised him and his younger brother in the same Red Hook home where he would live if released and that his mother owns outright. Mr. Monarchi's mother has offered to post her family home in Red Hook, and thus his family's financial future, to reasonably assure the Court of Mr. Monarchi's continued appearance. Mr. Monarchi's grandparents reside in the Red Hook area as do other extended family members, including an aunt and several cousins. He has additional uncles, aunts, and cousins in New Jersey, Pennsylvania and Indiana, several of whom are willing to sign a bond in this case. Collectively, Mr. Monarchi's sureties (his mother and father, uncles, and aunt) provide tremendous moral suasion. They would all face destabilizing financial ruin in the event of their son/nephew's flight—a price Mr. Monarchi would never foist upon his nearest and dearest. So too, the stringent conditions that would effectively preclude Mr. Monarchi from fleeing undetected are more than sufficient to reasonably assure the Court of his continued appearance throughout this case. *See Madoff*, 586 F. Supp. 2d at 249 ("The [Bail Reform] Act does not require that the risk be zero, but that conditions imposed 'reasonably assure' appearance."). The Court should order Mr. Monarchi's release pursuant to the proposed conditions.

Indeed, courts in this district have frequently released defendants with similar, or less substantial, local ties pursuant to comparable bail conditions. *See, e.g., United States v. Hwa*, No. 18-CR-538 (MKB) (E.D.N.Y. 2018) (releasing defendant, known as Roger Ng, indited in largest foreign bribery case in history, where the defendant was a foreign national, with no U.S. ties, who was extradited to the United States for prosecution); *United States v. Galitsa*, No. 17-CR-00324 (VEC), 2016 WL 11658188, at *1 (S.D.N.Y. July 28, 2016) (releasing, over the government's objection, a defendant arrested for illegal reentry into the United States); *United States v. Webb*, No. 15-CR-252 (PKC) (E.D.N.Y. 2015) (defendant, a citizen of the Cayman Islands who was extradited from Switzerland, released on bond in international FIFA bribery case); *United States v. Seng*, No. 15-CR-706 (VSB) (S.D.N.Y. 2015) (defendant, arrested for large-scale bribery of a

---

[8] The Court's flight determination relied, in part, on a finding that Mr. Monarchi has the "financial resources to facilitate flight and evasion of detection." Trans. at 40. As a result, the Court appointed counsel only "provisionally" and "for two weeks." *Id.* at 12. Having retained counsel in this case, Mr. Monarchi's financial resources are now far different than they had been on August 22, 2025. He no longer has access to the extent of assets previously disclosed to the Court, which alters the basis for its finding that he poses a risk of flight. As would be argued at a reopened detention hearing, Mr. Monarchi has no place else he can go.

United Nations official while boarding his private jet to leave the country, released on house arrest although he was a citizen of China, worth $1.8 billion, had access to private jets, and had no ties to the U.S.).

Mr. Monarchi's substantial bail package is sufficient to ameliorate any risk of flight or danger. The Court should order his release accordingly.

## V. Conclusion

The government simply cannot carry its burden of demonstrating that the proposed combination of conditions presented here are insufficient to reasonably address any risks posed by Mr. Monarchi's pretrial release. This Court should, therefore, reopen the detention hearing and order his release on these substantial conditions. *See* 18 U.S.C. § 3142(c) (the "judicial officer *shall* order the pretrial release of the person -- . . . (B) subject to the *least restrictive* further condition, or combination of conditions, that such judicial officer determines will reasonably assure . . . the safety of any other person and the community…") (emphasis added).

Respectfully submitted,

/s/ JIS
Jason I. Ser
Meister Seelig & Fein PLLC
125 Park Avenue, Suite 700
New York, New York 10017

*Counsel for Daniel Monarchi*

cc: Counsel of Record (*via ECF*)