

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*50 Main Street, Suite 1100*
*White Plains, New York 10606*

December 12, 2025

**BY ECF AND EMAIL**
The Honorable Andrew E. Krause
United States Magistrate Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

     Re:    *United States v. Daniel Monarchi*, 25 Mag. 2616

Dear Judge Krause:

     The Government respectfully writes in opposition to defendant Daniel Monarchi's motion to reopen his August 22, 2025 detention hearing (ECF No. 5) (the "Motion"). Monarchi fails to set forth new material information not known to him at the time of the detention hearing, and thus fails to meet the standard to reopen bail. Indeed, while he contends that the Government has failed to develop evidence of additional victims beyond the three identified in the complaint, he is wrong—the Government has identified yet another victim who sent Monarchi child sexual abuse material, thus making the evidence against him now *stronger* than represented at the bail hearing. In any event, all of the same reasons that underlay the Court's initial determination that he should be detained require the defendant's continued detention pending trial. Monarchi's motion should be denied.

## I.      Background

### A.  The Offense Conduct

The Complaint charges Monarchi with sexual exploitation of a child, in violation of Title 18, United States Code, Section 2251(a) and (e). (ECF No. 2 at 1). As alleged in the Complaint, from on or about September 30, 2024, through on or about October 29, 2024, Monarchi, a 26-year-old special education teacher in a middle school, used the Discord username "mrteacherman" to knowingly send sexually explicit photos and messages to a 14-year-old minor ("Victim-1"), and to have Victim-1 produce sexually explicit pictures and videos for Monarchi. (*Id.*).

In particular, on or about October 1, 2024, at approximately 12:08 a.m., Monarchi wrote to Victim-1 on Discord, "I like how you look with the phone. I like how you look in general, cutie." Monarchi sent Victim-1 a photo[1] and asked, "you're an 8th grader?" Victim-1 responded, "mhm." At approximately 12:14 a.m., Monarchi transmitted another photo[2] to Victim-1 and wrote, "I want you to imagine how I'd feel." Later at approximately 12:33 a.m., Monarchi replied, "know that if I was there, you be dripping with my cum rn" and said "I'll maybe chat with you later on, yes! (I don't typically use this disc all that often." Victim-1 replied, "ah ok!" Monarchi replied, "this is a burner account for my own insulated safety, no offense." (Complaint ¶ 5(d)).

On or about October 3, 2024, at approximately 3:44 p.m., following discussion about Monarchi's delayed reply to a message from Victim-1, Monarchi told Victim-1, "Like I said, this is not my normal discord account and I don't always leave this logged in because it's obviously not ideal to have this accessible." (Complaint ¶ 5(e)).

---

[1]      This photo depicts the clothed crotch area of an individual wearing a pair of grey boxers with a blue waistband. The individual's hand is on his boxers on his crotch area.

[2]      This photo depicts the same clothed crotch area of the boxers that appear in the first photo Monarchi sent to Victim-1. The photo shows a hand underneath he boxers and appears to be touching the male's crotch.

On or about October 20, 2024, at approximately 11:09 p.m., Monarchi told Victim-1, "I wanna see you topless and then I wanna see you playing with yourself and I wanna see your face as you do. I want to see you experience that joy. I want to know how much I'm affecting you rn." Victim-1 replied, "stripping rn for you." Monarchi replied, "I want to see you strip." Victim-1 responded, "filming rn lolz." Beginning at approximately 11:16 p.m., Victim-1 then sent Monarchi three videos. (Complaint ¶ 5(h)).

The first video, which is approximately 13 seconds in duration, depicts Victim-1 taking off her shirt and touching her naked breasts. (Complaint ¶¶ 5(h), 6(e)). The second video, which is approximately 30 seconds in duration, depicts Victim-1 from the waist up. Victim-1 is lying on her side. She is naked and touching her breasts with one hand. Her other hand appears to be reaching below off-screen toward her genital area. (Complaint ¶¶ 5(h), 6(f)). The third video, which is approximately 37 seconds in duration, depicts Victim-1 lying on her back. She is naked with her breasts and genitals exposed. She has one hand on her breast and, with the other hand, she is stroking her genital area moving her finger back and forth. (Complaint ¶¶ 5(h), 6(g)).

On or about October 22, 2024, at approximately 7:57 p.m., Victim-1 asked Monarchi "whyd you delete the selfieu sent to me :(((." Monarchi replied, "maybe you'll be interested in seeing me tonight? (as a legit teacher I feel nervous about having my face out there tbh)." (Complaint ¶ 5(i)).

On or about October 22, 2024, at approximately 10:38 p.m., Monarchi sent Victim-1 a selfie photo of himself sitting on a bed with striped bedsheets. (Complaint ¶¶ 5(j), 6(c)). At approximately 10:55 p.m., Monarchi told Victim-1, "I want you to put your fingers inside and find your clit. Rub it for me and think about how good you feel." Then, at approximately 10:56 p.m., Monarchi sent Victim-1 a photo of an erect penis. The photo shows a hand holding the penis, and

the same striped bedsheets as in the selfie photo that Monarchi sent to Victim-1 earlier in the evening. (Complaint ¶¶ 5(j), 6(d)). Monarchi told Victim-1, "Think about how deep I'd push into your wet sloppy pussy. How I'd grab you as I thrust into you. How we'd find a rhythm as our hips collide again and again. As I pound into you deeply and harder and harder. That wet slapping sound as I slide in and out of you again and again." Monarchi said, "I want you to cum for me, I want you to cum for me in a video." At approximately 11:00 p.m., Monarchi told Victim-1, "I wanna see you I wanna watch you cum for me." Victim-1 replied, "okay" and Monarchi wrote, "Show me how special you are. Show me why you deserve an A+." At approximately 11:04 p.m., Victim-1 sent a video to Monarchi depicting Victim-1 lying on her back naked with her breasts and genitals exposed, using one hand to stroke her genital area, as she inserts her fingers into and out of her vagina. At approximately 11:08 p.m., Monarchi wrote, "you're gonna take a sexy picture in the bathroom for me at school tomorrow because you're mine. My little teacher pet." (Complaint ¶¶ 5(j), 6(h)).

In addition to Victim-1, Monarchi exchanged messages with two additional minors on Discord, a 13-year-old child ("Victim-2") and a 14-year-old child ("Victim-3"). Victim-2 told a forensic interviewer that she knew "mrteacherman" as "Dan" and understood that he was 26 years old and a teacher in New York. (Complaint ¶ 10(b)). Victim-2 further stated that "mrteacherman" sent her photos of his penis throughout the day and night as well as videos of him masturbating. (*Id.* ¶ 10(d)). Victim-3 told the FBI that "mrteacherman" was really sexual and wanted to role play, so she eventually blocked him. (*Id.* ¶ 11).

### B. Monarchi is Charged, Arrested, and Detained

On August 19, 2025, Your Honor issued the Complaint charging Monarchi with sexual exploitation of a child.

On August 22, 2025, Monarchi was arrested and presented before Your Honor. The Court held a detention hearing, during which the Government argued that Monarchi should be detained as both a danger to the community and a risk of flight. As to the danger that Monarchi poses, the Government highlighted the serious nature of the charged offense (Tr. at 18:17-19:4; 21:7-23:1), as well as Monarchi's messaging additional victims, including Victim-2 and Victim-3. (Tr. at 19:25-20:22). The Government also proffered that it was investigating whether there were additional potential victims beyond the three identified in the complaint, noting that it was "still working on getting interviews with those victims and tracking down evidence" (Tr. at 20:11-12), and that it had received information on an additional victim "as of this afternoon." (Tr. at 20:14). The Government also cited, in favor of detention, Monarchi's sophistication in avoiding detection and attempts to destroy evidence, including the Discord messages above where he "reference[d] burner accounts" and "deleting photos with his face in them." (Tr. at 23:15-23). As to risk of flight, the Government cited Monarchi's access to over $150,000 in his personal accounts, and his strong incentive to flee, given that he was facing a 15-year mandatory minimum term of imprisonment, and would likely lose his job as a teacher and have to register as a sex offender. (Tr. at 24:4-14).

The defense asked that Monarchi be released on conditions, including a $250,000 bond co-signed by his parents. (Tr. at 25:13-16). The defense argued that "the fact that his parents are present alone would rebut the presumption of no [bail] conditions being permissible." (Tr. at 25:24-25). The defense also highlighted Monarchi's ties to the community. (Tr. at 27:19-20), and argued that Monarchi's dangerousness was undercut by the time it took for the Government to investigate the NCMEC report on Victim-1 and to arrest Monarchi (Tr. at 26:13-15, 27:2-8).

After hearing from the parties, the Court detained Monarchi, finding that he was both a danger to the community and a risk of flight. (Tr. 36:8-10). As Your Honor explained:

> There really can be no question, and there hasn't really been any argument, that the nature and seriousness – the nature and circumstances of the offense charged are serious and that those point in favor of detention. The weight of the evidence against you, as proffered by the Government, appears quite strong. … [A]s set forth in the Complaint and as articulated further during the course of today's proceedings, the weight of the evidence against you does appear to be strong. That is … a factor that points in favor of detention.

(Tr. at 36:17-37:4).

While the Court indicated that its view of Monarchi's risk of flight was a "closer call," it ultimately found that Monarchi was a flight risk, which is an independent basis for detention. Your Honor pointed out that the defendant was (and is) facing a "very serious prison term" of imprisonment, including a 15-year mandatory minimum sentence, and that creates a "very significant motivation to flee, especially for somebody who has never served any time in prison before." (Tr. at 40:12-16). Additionally, Your Honor noted that the defendant's financial resources could be used to flee and evade detection. (Tr. at 40:9-11).

Over the past several months, the parties have agreed to several orders of continuance, as Monarchi has indicated that he intends to make a mitigation submission to the Government in aid of a potential disposition of this matter without the need for trial.

## II.     The Defendant's Motion Should Be Denied

The defendant makes two arguments for reopening his detention hearing. First, he claims that the "weight of the evidence has changed," and, second, he argues that he has assembled a "more substantial bail package." (Mot. at 3). Neither argument has merit.

### A.  The Defendant Has Failed to Meet the Standard for Reopening Bail

While the defendant begins his motion by stating that the Government "cannot meet its burden" of showing that he must be detained (Mot. at 1), as the proponent of a motion to reopen bail, it is the defendant who has the burden to show that "information exists that was not known to

the *movant* at the time of the [detention] hearing and that has a material bearing on the issue

whether there are conditions of release that will reasonably assure the appearance of such person

as required and the safety of another person and the community." 18 U.S.C. § 3142(f) (emphasis

added). The defendant fails to meet this standard.[3]

The defendant principally contends that bail should be reopened because the strength of

the Government's evidence against him has somehow weakened since his detention hearing. (Mot.

at 3-5). But that is not so.

As set forth above, while the Complaint charges Monarchi with only one count of

production of child pornography relating to Victim-1, it also identifies sexually explicit messages

that he exchanged with two additional minors:  Victim-2 and Victim-3. During the bail

proceedings, the Government proffered that that it "ha[d] evidence that the defendant has also

engaged in similar conduct with multiple other victims, which the Government continues to

investigate" (Tr. at 18:25-19:2), and that the Government had "received more information of

another victim communicating with the school where the defendant recently worked." (Tr. at

20:13-18). The defendant does not contend that these assertions were untrue; rather, he suggests

that the Government has been unable to corroborate that there are even more victims beyond the

---

[3]    Monarchi also invites the Court to reopen bail under its "inherent authority." He fails, however, to acknowledge the high bar for this relief. As Judge Swain explained in *United States v. Petrov*, courts do not use inherent authority to reconsider bail where a "[d]efendant has not demonstrated that the court overlooked information or incorrectly applied the law, or that to allow the detention order to stand would constitute manifest injustice." No. 15-CR-66 (LTS), 2015 WL 11022886, at *3 (S.D.N.Y. 2015); *see also United States v. Paulino-Nolasco*, No. 21-CR-246 (RA), 2021 WL 1819678, at *1 (S.D.N.Y. 2021); *United States v. Kwok*, 23 Cr. 118-1 (AT), 2024 WL 54170, at *2 (S.D.N.Y. 2024) (denying motion for reconsidering bail); *United States v. Maxwell*, 527 F. Supp. 3d 659, 663 (S.D.N.Y. 2021) (same); *Jackson v. Goord*, 664 F. Supp. 2d 307, 313 (S.D.N.Y. 2009) ("[R]econsideration of a previous order by the court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."). The defendant certainly does not provide any facts that meet this high bar.

three minors identified in the Complaint, and that this somehow lessens the strength of the evidence against him and the danger that he poses to the community.

As an initial matter, the Government's investigation remains ongoing. There is no requirement that Government act on the defendant's timetable. Nor must the Government inform him of the status of its investigation—particularly where, as here, the defendant has indicated that he wishes to forbear indictment to submit a mitigation package, and where the Government has made available to the defendant pre-indictment discovery as requested. Certainly, the status of the Government's investigation of other uncharged conduct does not qualify as a changed circumstance that justifies reopening bail.

While the defendant is not entitled to any update on the Government's investigation of him, the Government has, in fact, followed up with the two potential victims referenced at the bail hearing, one of whom indicated that he was reluctant to be interviewed due to severe anxiety and the other of whom the FBI determined did not engage in sexually explicit conversations with Monarchi as they were more interested in cutting and gore. The Government is also continuing to attempt to identify the potential victim who communicated with Monarchi's school. That the Government's investigation is ongoing is not a changed circumstance to reopen bail.

Indeed, the Government's continued investigation has showed even more evidence of Monarchi's danger, beyond that proffered at the bail hearing. Subpoena returns from an online messaging platform show that, from June 11, 2024 through May 21, 2025, Monarchi exchanged approximately *5,800 messages* with other users. This is approximately 17 messages *per day* during that time frame. Monarchi himself apparently utilized approximately 47 different usernames on this platform, including "RealTeacherDM," "Teacher4HrnySnapRn," and "DrtyGamewTeachr." And he messaged approximately *1,800 different usernames*, including "F21backwards,"

"morgannn31bkwrds,"          "21backwardslookingforolder,"          "Oldermenluvverr."          and

"Lola1_6nhorxybi." The Government continues to investigate but believes that many of these

usernames indicate that the user is a minor.[4]

Additionally, based on records provided by Discord, the Government has identified yet

another potential victim who sent Monarchi child sexual abuse material. In a conversation on

Discord, Monarchi asked an individual how old she was and the individual replied that she was

fifteen. Monarchi then asked her for photos. The victim provided a photo displaying her breasts

and vagina. Additionally, in a separate conversation on Discord, Monarchi asked an individual

how old she was and the individual replied that she was thirteen. Monarchi then asked the

individual "[d]o you have snap? I have a burner account if you do." The individual sent Monarchi

a photo, and Monarchi replied, "[d]o you have a better body pic where you can crop out your face

then?" These new investigative leads show that the Government's evidence has not weakened

since the bail hearing, it has strengthened. While the Government will continue to investigate all

evidence of Monarchi's sexual abuse of children, the outcome and timing of that investigation is

simply not new material information that justifies reopening bail.

Nor does the defendant's updated bail package qualify as new information to reopen the

detention hearing. The defense's motion does not state a change in Monarchi's or his parents'

financial circumstances since the bail argument took place on August 22, 2025. To the contrary,

the defense is clear that Jennifer Monarchi (the defendant's mother) has owned her house outright

for several years. Additionally, Monarchi's parents were not only supportive of their son from the

---

[4]      The Government understands that minor users may structure their usernames in a coded
way to indicate their age (*i.e.*, "31bkwrds" indicates that the user is a 13-year-old, or "1_6"
indicates that the user is a 16-year-old).

very beginning, but physically present during the detention hearing, as the defense and Your Honor even acknowledged. (Tr. at 25:13-16, 36:4-6).

While the defendant contends that his "prior defense counsel did not have an opportunity to speak with his parents" or "investigate the existence of extended family members who may have been willing to act as sureties" (Mot. at 6), that was based on his decision to immediately proceed with a detention hearing rather than seek a continuance so that he could prepare and obtain evidence for a detention hearing. Indeed, a continuance "allows the parties to investigate facts and prepare arguments for the detention hearing." *United States v. McLean*, 749 F. Supp. 3d 167, 174 (D.D.C. 2024) (cleaned up); see also S. Rep. No. 98-225, at 21-22 (1983) (continuance allows the parties to "prepare adequately for the hearing"). As the Court knows, defendants commonly stipulate to detention without prejudice as they assemble a proposed bail package. The defendant's decision to proceed with the detention hearing requires him to present *new* information, unknown to him at the time of the hearing, to reopen bail. He has not done so here.

Allowing the defense to reopen bail proceedings by simply proposing a new bail package would only encourage serial motions to reopen based on information that was nevertheless previously available, in contravention of the Bail Reform Act's requirements. *See United States v. Flores*, 856 F. Supp. 1400, 1406 (E.D. Cal. 1994) ("A rule that would not discourage a party for failing to acquire readily available evidence for presentation the first time is a rule that encourages piecemeal presentations. Judicial efficiency is not served by such a practice."). The Bail Reform Act does not allow defendants to "repeatedly file multiple motions to modify his release conditions until he gets the ruling he likes." *United States v. Smith*, No. CR-12-1298-PHXGMS (ECV), 2012 U.S. Dist. LEXIS 124187, at *11 (D. Ariz. Aug. 31, 2012).

### B. The Defendant Is Improperly Attempting to Relitigate The Bail Decision

Even if the Court were inclined to consider the merits of his motion, it should be denied because the Court's detention determination was eminently correct.

As the Court is aware, detention is necessary where "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In making that determination, courts consult several factors: (i) "the nature and circumstances of the offense charge"; (ii) "the weight of the evidence against the person"; (iii) the "history and characteristics of the person"; and (iv) the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

The Government's burden of proof as to risk of flight is preponderance of the evidence, while dangerousness must be shown by clear and convincing evidence. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). Although "more than 'preponderance of the evidence,'" clear and convincing evidence demands "less than [a finding] 'beyond a reasonable doubt.'" *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).

Where, as here, there is probable cause to believe that the defendant committed an offense involving a minor victim under Section 2251 (among other statutes), there is a statutory presumption that detention is necessary. *See* 18 U.S.C. § 3142(e)(3)(E). To overcome that presumption, the defendant must produce "evidence that he does not pose a danger to the community or a risk of flight." *Mercedes*, 254 F.3d at 436; *see also United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) ("[A] defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption."). And even if a defendant carries that burden of production, the statutory presumption does not disappear. Instead, the presumption then becomes

11

a factor to be weighed and considered like all the others in deciding whether to release the defendant. *Rodriguez*, 950 F.2d at 88.

Here, as the Court correctly found at the initial bail hearing, the defendant cannot meet this standard. To the contrary, consistent with the statutory presumption, all of the Section 3142 factors strongly favor detention in this case.

Beginning with the nature of the offense, the offense conduct makes it plain that the defendant presents a danger to the community. The defendant is charged with sexually exploiting Victim-1. As Your Honor explained during the bail argument: "[t]here really can be no question, and there hasn't really been any argument," that the nature and circumstances "are serious and that those point in favor of detention." (Tr. 36:17-21). Indeed, the defendant was a middle school teacher, occupying a position of trust in the community, who has been charged with sexually exploiting a child, and who appears to have engaged in additional similar misconduct. The offense is serious, as the Court previously stated.

Second, the weight of the evidence against the defendant is strong. The defendant sent Victim-1 pictures of himself in his bedroom at his mother's home. And he directed Victim-1 to create child pornography to send back to him. There is no serious question that he committed this offense. Indeed, while Monarchi has not been indicted at this time, the Government has permitted the defense to review the evidence pertaining to Victim-1. Monarchi's counsel thus saw the Discord messages, looked at the photos, and watched the videos—none of which are challenged in this motion. To the contrary, consistent with the strength of the evidence against him, defense counsel has indicated that Monarchi plans to submit a mitigation package for the Government to consider as part of a potential pretrial disposition. Further, while the defense attempts to focus on

the strength of the evidence that Monarchi has committed even more crimes, beyond that charged in the complaint, as set forth above, the strength of the evidence in that respect has only increased.

Third, at the detention hearing, Your Honor indicated that Monarchi's history and characteristics points "in favor of release" because Monarchi does not have any criminal history, no history of violence or drug or alcohol abuse, and he has family ties to the community. (Tr. 37:5-22). There is no evidence that this factor has in any way changed over the past four months.

Finally, the nature and seriousness of the danger to any person or the community that would be posed by Monarchi's release has, in anything, increased since the detention hearing. At the time of the hearing, Your Honor discussed Monarchi's statements in Discord that "acknowledge that you were at risk . . . in engaging in these communications." (Tr. 38:2-3). Your Honor cited from the Complaint (Tr. 38:5-9), which contains the defendant's statements on Discord on October 3, 2024 where he told Victim-1 that "this is not my normal discord account and I don't always leave this logged in because it's obviously not ideal to have this accessible." (Complaint ¶ 5(e)). Your Honor also referenced (Tr. 38:9-11) the defendant's statement on October 22, 2024 where he told Victim-1 "as a legit teacher I feel nervous about having my face out there tbh." (Complaint ¶ 5(i)).

Since the bail argument, the Government has identified another instance of Monarchi attempting to cover his tracks. As set forth above, in a Discord message with an individual who stated that they were a 15-year-old minor, Monarchi stated "[d]o you have snap? *I have a burner account if you do*." This is thus yet another instance of Monarchi using sophisticated techniques in messaging minors in order to avoid detection.

Additionally, during the hearing, Your Honor specifically pointed out that "while there's only one charge involving a single victim, the Complaint itself references multiple other victims." (Tr. at 39:4-7). Your Honor states that "the charge with respect to victim 1 is not a single instance

13

or a single slip in conduct or an aberration in conduct, and that gives rise to a significant concern that your release would pose a danger to other persons or the community and that the Government has met its burden to show that by clear and convincing evidence." (Tr. at 39:21-40:1). That remains correct. Indeed, since the bail argument, the Government has identified even more evidence showing that Your Honor was correct that this is not a one-time mistake. (*Id.*).

Finally, with regard to risk of flight, during the bail hearing, and as outlined above, Your Honor noted that Monarchi had a "very significant motivation to flee." (Tr. at 40:14). Here, the defense focuses on the amount of the unsecured bond and the number of sureties. (Mot. at 6-7). However, Your Honor did not discuss the size of the unsecured bond or the number of sureties as a factor in your decision on the defendant's risk of flight. (*See* Tr. at 40). The increase in the bond and sureties do not address the core of Your Honor's concerns as to *why* the defendant is a risk of flight: he is facing a very serious prison sentence and has financial resources to flee. If anything, the increase in the bond and number of sureties supports the notion that Monarchi has access to *even more* funds than the Court believed he had at the bail hearing. Monarchi continues to be a danger to the community and a flight risk, and he should thus remain detained pending trial.

14

**Conclusion**

For the foregoing reasons, the Government respectfully submits that, because there is no new evidence presented here, the defendant's motion to reopen the detention hearing should be denied.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: _____

Patricia M. Reville
Assistant United States Attorney
(914) 993-1945

cc:        Jason Ser, Esq. (by ECF and email)